THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* ARTHUR HERBERT, Alias TOOTSIE HERBERT, DAVID DIAMONDSTONE and HARRY FRANKEL, Defendants.

Supreme Court, Extraordinary Special and Trial Term, New York County, April 20, 1937.

*William C. Dodge, District Attorney,* and *Thomas E. Dewey, Deputy Assistant District Attorney* [*Stanley H. Fuld* of counsel], for the plaintiffs.

*Maurice Deiches* and *Newman Levy,* for the defendant Herbert.

*David P. Siegel,* for the defendant Diamondstone.

*Griffiths & Content* [*Maurice Deiches* and *Murray S. Kaplan* of counsel], for the defendant Frankel.

PECORA, J. The defendants jointly were indicted by the extraordinary grand jury of the county of New York, charged with the crime of grand larceny in the first degree. They have interposed demurrers to the indictment in identical forms. While the demurrers contain eight specifications of objections, there is only one which is worthy of consideration, namely, that " With respect to each of the grounds of the said indictment, the facts stated therein do not constitute a crime."

There are six counts in the indictment, each one charging that statutory form of larceny known as embezzlement.

In its first count the indictment accuses the defendants in language, in part, as follows: " The said Herbert being then and there business agent and official delegate, and the said Diamondstone being then and there president, and the said Frankel being then and there secretary-treasurer of a certain unincorporated association, having its offices in the City, County and State of New York, and called the Chicken Drivers, Chauffeurs and Helpers Union, Local 167, of the International Brotherhood of Teamsters, Chauffeurs, Stablemen, and Helpers, * * * then and there having in their possession, custody and control * * * $6,000 lawful money of the United States of America, the property of the aforesaid Local and of its members did feloniously appropriate the said sum of money to their own use, with intent to deprive and defraud the said Local and its members of the same and of the use and benefit thereof."

Obviously, the indictment is drawn under subdivision 2 of section 1290 of the Penal Law.

The other five counts are couched in similar terms. The aggregate amount of the larcenies charged against the defendants exceeds $35,000.

The contention now advanced by defendants is that they cannot lawfully be charged with the larceny of the funds of the local, because, as officers and members thereof, they have title to such funds jointly with all its other members.

To sustain this contention, reliance is had upon the analogous interest which partners have in partnership property. This analogy, however, is unsound for various reasons — only a few of which need be pointed out.

It may be conceded that partnerships and labor unions have some characteristics in common. Thus, they are both unincorporated associations; and their members have a peculiarly distinctive form of joint title to their respective property, although in neither case is the title that of joint tenants or of tenants in common.

But there are at the same time certain important differences between them. The purpose of a partnership is essentially to enable its members, as principals, to conduct a lawful business, trade or profession. Such business, trade or profession is to be carried on for the pecuniary gain of the partners. No one may become a partner without the consent of all the partners. In our State this rule is a statutory one, for the Partnership Law, section 40, subdivision 7, provides that " No person can become a member of a partnership without the consent of all the partners." This principle of personal selection of one's partners is substantially the doctrine of *delectus personarum*. (Sugarman, The Law of Partnership, § 22.) The number of members in a partnership is invariably small.

On the other hand, a labor union is a combination of working-men formed, not for the conduct of a lawful business, trade or profession for the pecuniary gain of its members; but for the purpose of securing, by united action, the most favorable wages and conditions of labor, and of otherwise improving their economic and social status. (Oakes on Organized Labor and Industrial Conflicts, §§ 1 and 3.) One of the most potent powers possessed by labor unions for the attainment of these objects is that of collective bargaining. With the development of modern industry, creating, as it has, complicated economic and social forces and new relationships between employer and employee, an enlightened public opinion has acknowledged the soundness of the principle underlying trade unionism. And it has given pronounced recognition to the abstract fairness of equipping labor with this power of collective bargaining, by legislation such as the National Labor Relations Act of 1935, the constitutionality of which was recently upheld by the United States Supreme Court in a series of cases (*National Labor Relations Board* v. *Freuhauf Trailer Co.*, — U. S. —; 57 S. Ct. 642; *Associated Press* v. *National Labor Relations Board*, — U. S. —; 57 S. Ct. 650; *National Labor Relations Board* v. *Friedman-Harry Marks Clothing Co.*, — U. S. —; 57 S. Ct. 645; *National Labor Relations Board* v. *Jones & Laughlin Steel Corp.*, — U. S. —; 57 S. Ct. 615; *Washington, Virginia & Maryland Coach Co.* v. *National Labor Relations Board*, — U. S. —; 57 S. Ct. 648; all decided April 12, 1937.)

It is well known that the membership of labor unions in many instances runs into the thousands; their members are widely scattered and have not the facilities and opportunities for daily collaboration which partners have. Furthermore, the principle of personal selection which is an indispensable one in the case of a partnership

does not apply to a labor union, for it is not required that one may become a member thereof only with the consent of all the other members.

The growth of power which has been accorded to labor unions by wise legislation, has also imposed upon them corresponding responsibilities with respect to the exercise of that power. Like the strength of the giant, it should be used with wisdom, lest it destroy rashly that which is good and should be preserved.

In the face of these distinctions and considerations, it would be incredibly mischievous folly to hold that a member of a labor union may, with impunity, misappropriate any property of the union which might by chance or design come into his physical possession. Such a rule would place the property of the labor union at the mercy of any adventurer who succeeded in gaining membership therein. It would flaunt an invitation to the thief to arm himself with a certificate of membership, and thus armed to loot the union of its assets without fear of those punishments which society properly inflicts upon the deliberate despoiler. It would tempt the crooked and the vicious to seek a place of leadership in the councils of the union. And there is no greater peril to the well being of labor unionism than the elevation to power in its ranks of corrupt and unscrupulous persons.

Reason and principle imperatively call for the overruling of the demurrers. But there is also adequate judicial authority therefor in the case of *People ex rel. Murphy* v. *Crane* (80 App. Div. 202, 1st Dept.), where it was specifically held to be larceny for an officer of an unincorporated association — in that case a stonecutters' association — to appropriate to his own use the money or property of the association.

The demurrer of each defendant is overruled.