PENTHOUSE PROPERTIES, INC., Plaintiff, *v.* 1158 FIFTH AVENUE, INCORPORATED, and BELLE C. HARRISS, Defendants.

First Department, April 21, 1939.

*Jacob Scholer* of counsel [*Kaye, Scholer, Fierman & Hays,* attorneys], for the plaintiff and for the defendant Belle C. Harriss.

*Moses Ely* of counsel [*McLean, Ferris, Ely & Fain,* attorneys], for the defendant 1158 Fifth Avenue, Incorporated.

UNTERMYER, J. This submitted controversy concerns the validity of certain restrictions upon the right to transfer stock and upon the assignment of a proprietary lease in a co-operative apartment house.

The plaintiff and the corporate defendant are organized under the Stock Corporation Law of the State of New York. The corporate defendant was caused to be organized in 1924 by Houston Properties Corporation (referred to as Houston). Since then it has been the owner of real property at the southeast corner of Fifth avenue and Ninety-seventh street, New York city, and the improvement erected there in that year. The building, a fifteen-story apartment house, was erected by Houston. In payment of the contract price for the construction of the building and the cost of the land, the defendant corporation issued its entire capital stock to Houston.

On September 24, 1925, Richard T. Harriss, the husband of the defendant Belle C. Harriss, entered into a subscription agreement with Houston, whereby he agreed to purchase 309 shares of the defendant corporation and became entitled to a proprietary lease for a term ending ninety-nine years from October 23, 1924, of apartment 6-B, a ten-room apartment on the sixth floor. Pursuant to the subscription agreement, and on October 27, 1925, Mr. Harriss entered into a proprietary lease for the apartment and took possession thereof. On January 24, 1929, he executed an amended lease, in form similar to the lease subsequently executed by his wife.

About August 24, 1931, Mr. Harriss transferred his stock, together with his rights in the proprietary lease of apartment 6-B, to his wife, the defendant Belle C. Harriss, and on September 10, 1931, Mrs. Harriss became a stockholder of record of the defendant corporation. A new certificate was issued to her and a new proprietary lease was made in her name. The new certificate was in all respects similar to the certificate previously held by Mr. Harriss.

In August, 1934, Mrs. Harriss exchanged her apartment for the duplex apartment known as 16-C, consisting of eleven rooms,

theretofore occupied by a Mrs. Smith under a similar proprietary lease in connection with which Mrs. Smith had held 750 shares of stock. In consideration of this exchange, Mrs. Harriss, in addition to a cash payment, assigned to Mrs. Smith her 309 shares of stock and her rights in the proprietary lease of apartment 6-B. About the same time, Mrs. Harriss also purchased from Mrs. Smith fifteen shares of stock including the right to a proprietary lease of maid's room No. 12 and an additional twelve shares which included the right to a proprietary lease of maid's room No. 4 in the building. The corporate defendant thereupon issued to Mrs. Harriss three new certificates, representing her ownership of 777 shares, and three new proprietary leases of apartment 16-C and the two maid's rooms.

About March 17, 1938, Mrs. Harriss wrote to the defendant corporation stating that she intended to dispose of her stock and leases, but that before making any other disposition she would sell to the corporate defendant at a substantial sacrifice. That offer was refused. About a week thereafter Mr. Harriss formed the plaintiff. Its entire capital stock was issued to him and is still owned by him. Mrs. Harriss then sold to the plaintiff her 777 shares of stock and all rights in the three proprietary leases. On March 28, 1938, she wrote to the corporate defendant to that effect. On the following day the plaintiff demanded the transfer to it of the 777 shares of stock upon the corporate books and execution of three new proprietary leases in place of those previously held by Mrs. Harriss. The plaintiff also tendered to the defendant corporation the three certificates of stock in the name of Mrs. Harriss, duly indorsed for transfer with the necessary documentary stamps attached, and demanded that new certificates be issued in its name.

The defendant corporation notified the plaintiff of its refusal to recognize the transfer of the stock on account of non-compliance by the holder of the lease and stock with articles X and XVII (d) of the proprietary lease under which the apartment was rented and the stock held. The defendant corporation also refused to accept checks tendered by the plaintiff in payment of monthly assessments and other charges for operating expenses, the bills for which had been sent to Mrs. Harriss. The monthly assessments for April to November, 1938, inclusive, amount to $5,184.27, for which the corporate defendant claims, among other things, to be entitled to judgment against Mrs. Harriss.

The contract, dated February 16, 1924, between the corporate defendant as owner and Houston as contractor provided (a) that the contractor might sell the stock of the corporation to persons whom the contractor in its discretion considered acceptable as

tenants; (b) that the ownership of the stock should include the right to proprietary leases for ninety-nine years of apartments in the apartment house owned by the defendant corporation in accordance with a schedule contained in the contract, and (c) that all certificates representing the capital stock should be subject to all the terms and conditions of the proprietary leases.

When the stock was issued by the defendant corporation to Houston there were no other restrictions concerning future sale or transfer. In turn, Houston sold the stock to various persons pursuant to a prospectus and plan of organization issued by it and the corporate defendant. With regard to ownership and transfer of the stock, the plan of organization recites:

" The authorized capital stock * * * is 15,190 shares without par value, all of which * * * have been or will be sold by the Contractor under subscription agreements substantially in the form hereto annexed.

" The Contractor offers shares of said capital stock for sale under subscription agreements in the form hereto annexed, and the ownership of such shares will carry with it the right to a proprietary lease of an apartment in said apartment house in accordance with the table set forth in Schedule A hereto annexed and made a part hereof."

The plan of organization is a part of the subscription agreement, which provides:

" By its acceptance hereof the Contractor covenants and agrees that upon payment in full by the Subscriber to the Contractor, as aforesaid, and upon payment * * * of all amounts due for changes from or alterations in the plan of the apartment * * *, certificates representing the aforesaid shares of capital stock will be delivered to the Subscriber and that the Subscriber shall thereupon be entitled to a proprietary lease in the form executed by the Subscriber simultaneously with the execution of this agreement, * * *.

" Said certificates of stock shall be subject to all the terms and conditions of the aforesaid proprietary lease."

In each instance, as sales of stock of the defendant corporation were made by Houston, there was stamped upon the certificate the following:

" The shares represented by this certificate are held subject to all the terms and conditions of an indenture of lease, dated the day of , 19 , between 1158 Fifth Avenue, Incorporated, and the holder hereof, and also to all the terms and conditions of an agreement between said corporation and its duly appointed agents for the management of the premises owned by said corporation.

" This certificate is not assignable, and no rights shall be obtained in and to the shares represented hereby, unless the terms and conditions contained in said indenture of lease relating to the transfer hereof have been fulfilled."

This statement was not placed on the stock certificates pursuant to any provisions of the charter or by-laws of the defendant corporation, which never contained any restrictions with respect to the sale, transfer, assignment or other disposition of any of the shares or leases issued to stockholders. The form of certificate containing the restrictions was adopted by resolution of the directors of the corporate defendant at a meeting on October 16, 1924.

It has been stipulated that the plaintiff was organized for the purpose of acquiring 777 shares of stock from Mrs. Harriss and to procure from the defendant corporation in connection therewith proprietary leases to the apartments. The plaintiff's certificate of incorporation provides that said apartments are to be used for private residential purposes only and by an individual or individuals approved by its board of directors.

It is conceded that the stock was acquired by Mrs. Harriss, as well as by the plaintiff from her, with full knowledge of the provisions contained in the leases and on the stock certificate, with respect to the transfer of the stock and leases.

These provisions are as follows:

" X. That Lessee shall not cause or permit any of his stock and/or this lease, or any right of Lessee arising therefrom, to be assigned or subjected to any lien or encumbrance, except as in Article XVII, subdivision (d), hereof, specifically provided; and shall not sublet the demised premises or any part thereof without the prior written consent of Lessor.   *   *   *

" XVII. That this lease shall be terminated, otherwise than by expiration, as follows:   *   *   *

" (d) By and upon a sale, assignment or transfer of the stock owned by Lessee, together with Lessee's right to a lease of the demised premises for the remainder of the term hereof, with the consent of Lessor in writing, and the assumption, in writing, by the assignee, of obligations identical with those of Lessee under this lease, for the remainder of the term hereof, either upon acceptance by the assignee of an assignment of this lease or of a new lease; the consent of Lessor to be by authority of the Board of Directors or, upon refusal thereof by said Board, by authority of the holders of two-thirds of the capital stock; provided, that the failure of the Board of Directors to authorize such consent within thirty days after application therefor shall be equivalent to a refusal thereof and that the vote of the members of the Board of Directors and of

stockholders on such authorization may be expressed in writing or by telegram without a formal meeting. When this lease has been so terminated and Lessee has discharged all accrued obligations under this lease, he shall have no further liability hereunder and Lessor shall execute, acknowledge and deliver to Lessee a written release of Lessee from all further liability under this lease."

These are the provisions referred to in the indorsement on the stock certificate, with which, it is asserted, Mrs. Harriss failed to comply in undertaking to assign the stock and leases. It is these provisions which the plaintiff and Mrs. Harriss contend are invalid and unenforcible as in restraint of alienation.

Accordingly the plaintiff requests judgment, as does also Mrs. Harriss, that the following relief be granted: That the defendant corporation be required to recognize as valid the sale by Mrs. Harriss to the plaintiff of 777 shares of stock of the defendant corporation, and that the plaintiff be accorded all the rights of a stockholder therein, including the right to new certificates and new proprietary leases of the apartments allocated thereto.

In addition to a money judgment against Mrs. Harriss for $5,184.27 with interest, the defendant corporation demands a declaratory judgment that Mrs. Harriss is not entitled to assign her leases and stock without written consent of the board of directors of the corporate defendant or two-thirds of the stockholders, that her assignment to the plaintiff be declared ineffective, and for judgment dismissing the plaintiff's claim for transfer of the stock and the execution of new leases.

The question now presented, apparently never decided in this State, is the validity of the restrictive plan under which co-operative apartment houses have been constructed and the stock sold. The validity of such a plan is challenged by the plaintiff and by Mrs. Harriss on the ground that restraints against the alienation of the corporate stock imposed by the limitations contained in the lease, prohibiting any sale without the consent of the directors or two-thirds of the stockholders, are against public policy and, therefore, unenforcible.

The general rule that ownership of property cannot exist in one person and the right of alienation in another (*De Peyster* v. *Michael*, 6 N. Y. 467, 493) has in this State been frequently applied to shares of corporate stock (*Kinnan* v. *Sullivan County Club*, 26 App. Div. 213; *Brown* v. *Britton*, 41 id. 57; *Rosenback* v. *Salt Springs National Bank*, 53 Barb. 495; *Conklin* v. *Second Nat. Bank of Oswego*, 45 N. Y. 655; *Bank of Attica* v. *Manufacturers' & Traders' Bank*, 20 id. 501), and cognizance has been taken of the principle that " the right of transfer is a right of property, and if

another has the arbitrary power to forbid a transfer of property by the owner that amounts to annihilation of property." (*Fisher v. Bush*, 35 Hun, 641.) The same rule has been applied in other States. (*People ex rel. Malcolm v. Lake Sand Corp.*, 251 Ill. App. 499; *Matter of Klaus*, 67 Wis. 401; 29 N. W. 582; *Bank of Atchison Co. v. Durfee*, 118 Mo. 431; 24 S. W. 133; *State ex rel. Howland v. Olympia Veneer Co.*, 138 Wash. 144; 244 P. 261; *Bloede Co. v. Bloede*, 84 Md. 129; 34 A. 1127.) But restrictions against the sale of shares of stock, unless other stockholders or the corporation have first been accorded an opportunity to buy, are not repugnant to that principle. (*Kritzer v. Chloral Chemical Co., Inc.*, 238 App. Div. 611; *Hassel v. Pohle*, 214 id. 654; *Cowles v. Cowles Realty Co.*, 201 id. 460; *Moses v. Soule*, 63 Misc. 203; affd., 136 App. Div. 904.) The weight of authority elsewhere is to the same effect. (See Annotations on Validity of Restrictions, 65 A. L. R. pp. 1168–1171.) Likewise, restrictions against the assignment by the tenant of a leasehold, or against subletting, without the consent of the landlord first obtained, have frequently been sustained. (*Ogden v. Riverview Holding Corp.*, 134 Misc. 149; affd., 226 App. Div. 882; *Proctor Troy P. Co., Inc., v. Dugan Store, Inc.*, 191 id. 685; *Barrington Apartment Assn. v. Watson*, 38 Hun, 545.)

We are now required to decide within which of these divergent principles the co-operative apartment house restrictive plan is to be classified. In the consideration of that question the residential nature of the enterprise, the privilege of selecting neighbors and the needs of the community are not to be ignored. The tenant stockholders in a co-operative apartment building are concerned in the purchase of a home. Necessarily, therefore, the permanency of the individual occupants as tenant owners is an essential element in the general plan and their financial responsibility an inducement to the corporation in accepting them as stockholders. Under the " Plan of Organization " each stockholder is entitled to vote upon the choice of neighbors and their financial responsibility. The latter consideration becomes important when it is remembered that the failure of any tenant to pay his proportion of operating expenses increases the liability of other tenant stockholders. Thus, in a very real sense the tenant stockholders enter into a relation not unlike a partnership, though expressed in corporate form. HOLMES, C. J., in *Barrett v. King* (181 Mass. 476; 63 N. E. 934) said of this: " Furthermore, looking at the stock merely as property, it might be said that, so far as appears and probably in fact, it was called into existence with this restriction inherent in it, by the consent of all concerned. * * * there seems to be no greater objection

to retaining the right of choosing one's associates in a corporation than in a firm."

. Although it is true that the corporation which holds title to the real estate is not organized in co-operative form, it is manifest from the conceded facts that it was organized as a vehicle for the establishment of a community of homes rather than for the purpose of pecuniary profit to the stockholders. The primary interest of every stockholder was in the long-term proprietary lease, alienation of which the corporation had the power to restrain. (See authorities above cited.) The stock was incidental to that purpose and afforded the practical means of combining an ownership interest with a method for sharing proportionately the assessments for maintenance and taxes. (*Mont Cenis Apartments, Inc.*, v. *Alexander*, 120 Misc. 542, per LEHMAN, J.)

From all these considerations it follows that if restraint on alienation of the stock may be said to be imposed at all, it is a restraint which in every respect is reasonable and appropriate to the lawful purposes to be attained. (Compare *Sacks* v. *Neptune Meter Co.*, 144 Misc. 70; affd., 238 App. Div. 82.) We are unwilling to declare that arrangement to be illegal and unenforcible, particularly since such a declaration would invalidate a form of enterprise to which the Legislature has accorded implied recognition. (Civ. Prac. Act, § 1410, subd. 1-a.) We conclude, therefore, that the special nature of the ownership of co-operative apartment houses by tenant owners requires that they be not included in the general rule against restraint on the sale of stock in corporations organized for profit. (*68 Beacon Street, Inc.*, v. *Sohier*, 289 Mass. 354; 194 N. E. 393.)

It is proper to add that we have not considered nor do we decide whether the consent of the directors or stockholders may be, or has been, arbitrarily withheld. Justification for refusing to consent to a transfer, if justification is required, ordinarily presents an issue of fact (*Feist* v. *Fifth Avenue Bank*, 280 N. Y. 189, decided April 11, 1939), which is not presented by the agreed statement of facts nor argued in the briefs.

Judgment should accordingly be granted in favor of the defendant corporation, as prayed for in the submission, against the plaintiff, and in favor of the defendant corporation against the codefendant Belle C. Harriss for the sum of $5,184.27, with interest, but without costs.

MARTIN, P. J., DORE, COHN and CALLAHAN, JJ., concur.

Judgment unanimously granted in favor of the defendant corporation, as prayed for in the submission, against the plaintiff, and in favor of the defendant corporation against the codefendant Belle C. Harriss for the sum of $5,184.27, with interest, but without costs. Settle order on notice.