SIDNEY WEISNER, Appellant, *v.* 791 PARK AVENUE CORPORATION et al., Respondents.

First Department, December 16, 1958.

*Copal Mintz* for appellant.

*Stephen S. Bernstein* of counsel (*Alvin J. Burnett* and *James H. Powell* with him on the brief; *McLaughlin & Stern,* attorneys), for 791 Park Avenue Corp., respondent.

*Walter E. Warner* of counsel (*Chambers, Clare & Gibson,* attorneys), for Adrienne M. Gilbert, respondent.

BASTOW, J. Plaintiff has been denied a temporary injunction in this action and appeals from that decision. The corporate defendant is the owner of an apartment house building at 791 Park Avenue. It was incorporated in 1947 for the purpose of acquiring title to the premises and pursuant to a plan of organization shares of stock were allocated to the several apartments in the building. Simultaneously with the purchase of shares so allocated the prospective lessee entered into a proprietary lease with the owner.

Pursuant to this plan the defendant Gilbert became the owner of 330 shares of stock and executed the standard form of proprietary lease. The latter instrument contained a provision that it was not assignable unless, among other things, there was delivered to the lessor "A written consent * * * authorized by a resolution of the board of directors, or signed by a majority of the directors, or by lessees owning of record at least two-thirds of the capital stock of the Lessor accompanying proprietary leases then in force".

In May, 1958 plaintiff and the defendant Gilbert entered into a written agreement for the sale by the latter to the former of the 330 shares and the proprietary lease for the sum of $58,500. There was a contract provision that the sale was "subject to the approval of [defendant corporation] in the manner required under the Certificate of Incorporation, by-laws and proprietary lease" and "If the said approval is not

obtained, this contract shall become null and void ". The agreement was executed by defendant Gilbert, and a copy returned to plaintiff about May 16, 1958.

It appears from the moving papers that one Payne was the broker in this transaction. The managing agent of the property was Brown, Harris & Stevens, Inc., represented in these negotiations by one Ross, who was associated with that corporation and was also the treasurer and a director of defendant corporation. It is alleged in plaintiff's affidavit that on May 15 he met with Ross, who informed plaintiff that he (Ross) would not permit Weisner to purchase the apartment. Ross admitted, according to plaintiff, that he had no personal objection to the latter but based his opposition upon his feelings towards Weisner's brother, who Ross claimed had deprived Brown, Harris & Stevens of certain managerial business. Subsequently, and before plaintiff had submitted a required questionnaire together with his references, the directors of defendant corporation at a special meeting refused to approve the proposed transfer.

Thereafter and on June 3, 1958 the defendant Gilbert notified plaintiff that she elected to treat the contract as void because approval of defendant corporation had not been obtained. The following day (June 4) Brown, Harris & Stevens wrote to the attorney for defendant Gilbert " to confirm " that it had a responsible purchaser for the stock and lease at the same price plaintiff had agreed to pay.

In this action plaintiff seeks specific performance of the contract. It is alleged that the action of the directors of defendant corporation was taken solely upon the motivating influence of the managing agent acting through Ross based upon the latter's personal animus towards plaintiff's brother and the desire of Brown, Harris & Stevens to earn a commission by bringing about a sale to a third party; that none of the directors present at the meeting knew plaintiff or had any information about him on which to formulate an opinion in good faith as to his character, reputation, financial responsibility or social acceptability. Implicit in the allegations of the complaint is the charge that defendant Gilbert acted in bad faith because of her reliance upon the action of the board of directors although consent might have been obtained by the owners of record of at least two thirds of the capital stock of the corporation.

It should be emphasized that we are here considering an appeal from an order denying a temporary injunction. Neither the granting nor the refusal of such relief determines the ultimate issues. It " serves only to hold the matter in *status*

*quo* until opportunity is afforded to decide upon the merits.'', (*Walker Mem. Baptist Church* v. *Saunders,* 285 N. Y. 462, 474.) It may be assumed without deciding, that plaintiff has no adequate remedy at law. A consummation of the proposed sale to a third party would make the issues tendered by the complaint academic. There exists, however, the fundamental rule that there is no discretion to issue a temporary injunction unless it appears that the applicant therefor, on the face of his complaint or moving papers, prima facie has some kind of a cause of action against the opposite party. (10 Carmody-Wait, New York Practice, p. 531.) Conversely stated, it becomes necessary — in view of the denial of a temporary injunction and the resulting fact that thereby plaintiff is left without apparent remedy — to examine the record to determine in effect if the complaint supported by the moving papers states no cause of action as a matter of law.

We start with a consideration of the respective rights and duties of plaintiff and the defendant, Gilbert, under the contract of purchase and sale executed by them. As has been stated, the agreement was made subject to the approval of defendant corporation in the manner required under the certificate of incorporation, by-laws and proprietary lease. The latter instrument provided three methods of obtaining such consent, *viz.,* the written consent to such assignment (1) authorized by a resolution of the board of directors or (2) signed by a majority of the directors or (3) by lessees owning of record at least two thirds of the capital stock of the lessor. The only action taken by the defendant Gilbert to implement this provision was the dispatch of a letter by her attorney to the defendant corporation enclosing a copy of the contract. It was stated in the letter that "We realize that approval of a majority of the Board of Directors * * * is required" under the proprietary lease. When such approval was denied Mrs. Gilbert promptly elected to treat the contract as null and void and was prepared, until stayed by proceedings in this action, to enter into a contract of sale with a third party produced by Brown, Harris & Stevens.

Moreover, Mrs. Gilbert took no action to obtain the necessary consents from two thirds of the other proprietary lessees. It now appears that in the course of a proceeding before a Justice of this court resulting in the granting of a stay pending the determination of this appeal the defendant Gilbert attempted to remedy this omission. Her attorneys sent an identical letter to each proprietary lessee setting forth certain facts as to the negotiations between plaintiff and Mrs. Gilbert and the result-

ing refusal of the board to approve the transfer. Each lessee was asked to give written approval to such assignment. Tenant stockholders owning of record more than one third of the capital stock refused in writing to consent to the sale to plaintiff. Such letters are not conclusive upon this appeal. The lines of battle had long since been drawn. A temporary injunction had been denied. Absent a stay from this court Mrs. Gilbert was prepared to sell to the prospect produced by the managing agent. Furthermore, the letter did not reveal the salient facts as to the activities of Ross. It was ex post facto action that Mrs. Gilbert now claims should be construed as fulfillment of her contractual obligation. Only a trial will reveal whether such a finding may be made and whether the the action of the other proprietary lessees was taken with full knowledge of the facts or perhaps motivated by a desire to avoid entanglement in the conflicts of others.

Under the terms of the agreement Mrs. Gilbert agreed to sell her lease and stock subject to the approval thereof by the directors or stockholders of the defendant corporation. If such approval was " not obtained " the contract was a nullity. It is familiar law that " in every contract there is an implied covenant of good faith and fair dealing." (*Kirke La Shelle Co.* v. *Armstrong Co.,* 263 N. Y. 79, 87.) In a factual situation somewhat similar to the instant case it was written that " The special provision, to be sure, contains no express requirement * * * that the plaintiff use reasonable efforts to obtain approval. The absence of such an express requirement, even if found in other analogous provisions of the contract, is not significant here, where the circumstances make it plain that reasonable efforts must be made by the plaintiff before his right of cancellation arises." (*Stabile* v. *McCarthy,* 145 N. E. 2d 821, 824 [Mass.].)

We recognize that the determination of this issue would not be dispositive of the case. The exploration, however, of this factual area upon this subsidiary question sheds considerable light upon the prime issue as to the activities of the defendants resulting in the refusal of the directors to approve the proposed sale and the failure of Mrs. Gilbert subsequently to make any attempt to obtain the consent of two thirds of the stockholders. Instead, she promptly proceeded to negotiate with a prospect produced by Brown, Harris & Stevens.

We next consider a second subsidiary question that is not directly presented but requires passing mention to place in proper focus the main issue. Simply stated, may the consent of the directors or stockholders to a proposed sale be withheld

from a proprietary lessee arbitrarily and without justification? This question was posed but not passed upon by this court in *Penthouse Properties* v. *1158 Fifth Ave.* (256 App. Div. 685). Therein it was held (p. 692) "that if restraint on alienation of the stock [of co-operative apartments] may be said to be imposed at all, it is a restraint which in every respect is reasonable and appropriate to the lawful purposes to be attained." The court rejected as inapplicable the general rule that ownership of property cannot exist in one person and the right of alienation in another. In conclusion it was stated that "we have not considered nor do we decide whether the consent of the directors or stockholders may be, or has been, arbitrarily withheld. Justification for refusing to consent to a transfer, if justification is required, ordinarily presents an issue of fact (*Feist* v. *Fifth Ave. Bank,* 280 N. Y. 189 * * *) which is not presented by the agreed statement of facts nor argued in the briefs."

The defendants herein rely upon the general rule applicable to a provision against subletting contained in a lease. In such case it has been held that the landlord is under no duty to give consent and may even arbitrarily and unreasonably withhold such consent. (Cf. *Ogden* v. *Riverview Holding Corp.,* 134 Misc. 149, 150, affd. 226 App. Div. 882.) We do not agree that such a legal principle is applicable when considering the rights of a proprietary lessee and the owner of a co-operative apartment. It is unnecessary to here set forth the factual and legal distinctions of the relationship between a landlord and tenant, on the one hand, and of a proprietary lessee and the owner of a co-operative apartment on the other. These differences were set forth in *Penthouse Properties* v. *1158 Fifth Ave.* (*supra*). See, also, *Gilligan* v. *Tishman Realty & Constr. Co.* (283 App. Div. 157, affd. 306 N. Y. 974). It is unnecessary to explore in detail the rights in such circumstances of a proprietary lessee. It is sufficient to state that we do not embrace in its entirety the rule that the owner under any and all circumstances may arbitrarily refuse consent to a proprietary lessee to the sale of his lease and stock. As suggested in the *Penthouse* case (*supra*) justification for such action would ordinarily present a factual issue.

We thus come to a consideration of the complaint in the light of these facts and legal principles. It would seem that defendants oversimplify the problem by contending first, that plaintiff may not question the discretion of the board of directors and second, that it is apparent upon the facts presented the necessary consent will never be granted by the directors. Upon

the record before us it is impossible to conclude as a matter of law that the complaint considered in the light of the facts in the moving papers presents no triable issue. As has been suggested, a trial would determine whether or not defendant Gilbert has in good faith performed her contract obligations. It might be found that this defendant in the exercise of due diligence might have obtained and still could obtain the requisite consents of stockholders so that the transaction could be consummated.

Moreover, the activities of the managing agent of this property cast a cloud over the decision of the directors. The scope of the agent's authority is not fully presented but there is sufficient to justify the inference that there exists no clear line of demarcation between the activities of Brown, Harris & Stevens, as managing agent for defendant corporation and as a real estate broker. Ross, the treasurer and a director of defendant corporation was also associated with Brown, Harris & Stevens, the managing agent. The record does not disclose the extent of the interlocking relationship between the two corporations. It is uncontroverted, however, that Ross, who as a director of defendant corporation was to pass judgment upon the proposed transfer of lease and stock, informed plaintiff in substance that he (Ross) would prevent approval by the directors because of the action of plaintiff's brother in depriving Brown, Harris & Stevens of other managerial business. There is here presented a triable issue as to whether the proper and lawful request of Mrs. Gilbert for permission to transfer stock and lease was considered by the directors free of the interest of Brown, Harris & Stevens to profit from any sale of the lease and free of the personal animus towards plaintiff of one of its directors, who was also associated with Brown, Harris & Stevens. (Cf. *Globe Woolen Co.* v. *Utica Gas & Elec. Co.*, 224 N. Y. 483.) It may be surmised that Mrs. Gilbert after making a partial attempt to perform her contract obligation lost interest in pursuing the matter because Brown, Harris & Stevens produced a customer willing to pay the same amount as plaintiff and who apparently was acceptable to both the directors and the managing agent.

Thus, the issues presented are not as simple as defendants contend. There is not the single question of plaintiff's right to demand that the defendant corporation justify its refusal to consent to the transfer of stock and lease. Plaintiff is not a complete stranger to the giving or withholding of such approval. He had certain contract rights with defendant Gilbert and it might be found that she performed less than her contract

obligations. Furthermore, in the absence of denials from Ross, it must be found that plaintiff was met at the threshold of the approach to the directors with Ross' statement that he in substance would block the approval because of personal animus against plaintiff's brother. The issue here is not solely whether the approval of the directors may be or was withheld arbitrarily. The thrust of plaintiff is that the directors acted upon no information except the biased statements of Ross, who was in a position not only of serving two masters but also of serving one of his masters (Brown, Harris & Stevens) which may have had conflicting interests in its position as agent of defendant corporation and also as a real estate broker. Thus, plaintiff asserts, Brown, Harris & Stevens was placed in the strategic position of being able to reap benefits from any lessee expecting to obtain the necessary approval for a sale of stock and lease who would be required to accept a prospect produced by Brown, Harris & Stevens or run the risk of having the broker's representative on the board of defendant corporation successfully prevent the giving of the necessary approval.

Our search, as has been stated, is to determine whether on the face of the complaint and moving papers there is prima facie some kind of a cause of action stated against the defendants. It is apparent that much of what has been written may have no applicability when viewed in the light of the trial record. We conclude, however, that plaintiff has sustained the burden of showing that he has prima facie a cause of action and that the complaint, in substance, should not be dismissed by the denial of a temporary injunction.

The order appealed from should be reversed on the law and in the exercise of discretion and the motion granted.

M. M. FRANK, J. (dissenting). The crucial question here, as we view it, is whether the directors of a corporation which is the title owner of a co-operative apartment house, must justify the withholding of their consent to a transfer of the stock and an assignment of the lease. If they must do so, then injunctive relief is appropriate. If there is no such requirement placed upon them, then we cannot agree that the plaintiff has alleged a cause of action for specific performance and injunctive relief.

The problem is of vital concern to the holders of stock and leases in the luxury group of co-operatives. From the available data, it appears that the co-operative plan, of Finnish origin, originated in New York City, during the nineteenth century, had limited expansion in the nineteen-twenties and then

burgeoned after World War II to a degree far beyond the most optimistic prognostications of enthusiastic real estate experts.

In general, the plan consists of the vesting of title in a corporation, and the issuance to a purchaser of a proprietary lease to a specific apartment and shares of stock proportionate to the investment and reasonably related to the value of the equity. The stockholder-tenant, in monthly installments, pays his commensurate part of the carrying charges, such as taxes, interest, amortization of mortgage and maintenance costs for labor, heating, repairs and other items. The tenant-stockholder, of course, has the right to vote his stock to elect directors of his choice. The board either manages the building directly or selects the managing agent. This method of owner-occupancy is now encompassing property devoted to commercial purposes. Some idea of the extent of its growth may be gleaned from the appended footnote.*

The co-operative plan is *sui generis*. There are elements of ownership as well as stock and leasehold rights. The occupants are primarily interested in the purchase of homes and there is a common relationship different from that which exists among individual tenants living under the same roof. While it is true that they pay monthly maintenance charges in much the same manner as tenants pay rent, they have a substantial capital investment and a direct interest in the financial stability, character, reputation, and personal conduct of the other stockholder-occupants of the premises. If there is a failure to pay maintenance charges by one, the others must carry that burden. As has been aptly said, these arrangements infer a relationship akin to that of partners in a joint enterprise, although corporate in form (*Penthouse Properties* v. *1158 Fifth Ave.*, 256 App. Div. 685, 691, citing HOLMES, C. J., in *Barrett* v. *King*, 181 Mass. 476).

---

* To Buy or Not To Buy: That is the Question. What is a Cooperative Apartment? Lewis M. Isaacs, Jr., Record, Association of Bar of City of New York, Vol. 13, No. 4, p. 203, Department of City Planning, New York City, Newsletter, March, 1958. It has been estimated, that to the end of 1957, there were 40,000 co-operative dwelling units, of which more than 25% were classified in the luxury group. If we assume an average unit to be four rooms and arbitrarily fix a purchase price of $5,000 per room (a conservative estimate when compared with the quotations in the *New York Times*) the total investment in this kind of housing, at the beginning of 1958, would be in excess of $200,000,000. This analysis does not include co-operative apartments in low or middle income housing developments sponsored by public agencies, veterans' organizations, or labor unions. Those are erected under legislation which provides for government supervision either Federal, State or local, and includes special arrangements with which we are not concerned.

In this case, Mr. Sidney Weisner, a member of the Bar entered into a contract to purchase the shares of stock owned by the defendant, Mrs. Gilbert, in the corporate defendant, and to take an assignment of the proprietary lease held by her to an apartment in the building. The contract contained the following provision, " This sale is subject to the approval of 791 Park Avenue Corporation in the manner required under the Certificate of Incorporation, by-laws and proprietary lease. If the said approval is not obtained, this contract shall become null and void and neither party hereto shall be under any liability to the other by reason thereof, and all sums paid on account of this contract shall be returned, without interest, by the Seller to the Purchaser."

It is not disputed that after the contract was executed, Mrs. Gilbert, in writing, requested the board of directors of the defendant corporation to consent to a transfer of her stock and her proprietary lease. Pursuant thereto, the board of directors held a special meeting at which it voted to deny the request. It is charged that the rejection was inspired by Mr. Ross, the secretary of the corporation, for two reasons: first, because there had been some prior dispute between the plaintiff's brother and the managing agent; second, because the managing agent could earn a commission by negotiating the sale of the stock and lease to a third person. We do not believe that these are crucial questions in this matter.

We agree with the majority to the extent that, as a minimal requirement, there is no discretion to issue a temporary injunction unless, prima facie, the complaint or the moving papers sufficiently allege a cause of action. We assume that the reference is to situations where there is no adequate remedy at law, although we cannot agree that Mr. Weisner would have no remedy at law. In our view, the complaint herein does not state a cause of action. It does not allege that the board, in the exercise of its untrammeled judgment, would have consented, had it not been for the misconduct of Ross. It is basic that the judgment of a board of directors cannot be reviewed by the courts (*Kalmanash* v. *Smith,* 291 N. Y. 142, 155; *Weinberger* v. *Quinn,* 264 App. Div. 405, 408, affd. 290 N. Y. 635; *City Bank Farmers Trust Co.* v. *Hewitt Realty Co.,* 257 N. Y. 62, 67). If the bare conclusions stated in the complaint are discarded, no facts are pleaded to demonstrate bad faith on the part of Mrs. Gilbert. No duty is imposed upon her, either by law or under the terms of the contract, to wage a lawsuit against the corporation or its board to procure the assignment of the lease and the transfer of her stock to the plaintiff. She fulfilled her

obligation to Mr. Weisner under the contract when she requested the board's consent, and when it refused, she bowed to its will. Not a single fact is pleaded tending to establish her participation in any wrongful act designed to defeat performance of her contractual obligation. There is no showing that Mrs. Gilbert did not act in good faith, as was the situation in *Kirke La Shelle Co. v. Armstrong Co.* (263 N. Y. 79), cited in the majority opinion. Nor do we agree that *Stabile* v. *McCarthy* (145 N. E. 2d 821 [Mass.]) is applicable here, for in that case, which has no factual identity with this, the plaintiff, seeking relief, failed to perform his contractual duty.

It is important to note that Mrs. Gilbert is not raising any issue with respect to the corporation, and we are not called upon to decide whether she, as a stockholder and lessee would have the right to complain. The issue is raised by a stranger to the corporation, who has no contract with it that is being breached. Nor is this a case where a vendor is charged with conspiracy to perpetrate a fraud upon the plaintiff, as vendee, or to tortiously breach the contract. If Mr. Weisner claims that there was a tortious interference with his contractual rights, he may have an action for damages for the frustration of his bargain.

The charge is made that there is a conflict of interest insofar as Ross is concerned, because he is a member of the board and an officer of the managing agent. We do not find any substance to that claim in the record, but if we assume it, *arguendo*, it does not taint or nullify the determination of the board, whose consent was required, as a condition precedent, to bind Mrs. Gilbert under her contract with the plaintiff. Nor can we rewrite the contract pursuant to which board approval was to be governed.

It is suggested that Mrs. Gilbert failed to perform under the contract because she did not endeavor to obtain consents from more than two thirds of the proprietary lessees, after the board refused to consent to the transfer. This was, of course, another way to arrange a valid assignment. We do not believe that she was under a duty to do so. Three methods to obtain approval of an assignment are provided in the lease and they are in the disjunctive. Any one of them would be sufficient for either approval or rejection of the request. One of the appellants' briefs states, without denial, that prior to the argument of the appeal, 15, or half of the total number of occupants, excluding Mrs. Gilbert, had refused to consent to an assignment. While we agree that this fact was not presented to Special Term, we think it was properly brought to our attention, since the canvass

came as the result of a suggestion made during a hearing on a stay application to this court and is contained in the filed papers. We find significance in the results of the poll of the other tenants. Since half of them rejected Mr. Weisner, a fair inference may be drawn that the action of the board was neither arbitrary nor unjustified, and was, in effect, approved by more than the required number of shareholders. Moreover, since an injunction is sought and the action is in equity, this court has the same power to shape the relief as resides in Special Term and may provide relief appropriate at the end of the litigation (see *Lightfoot* v. *Davis,* 198 N. Y. 261, 273; *Sherman* v. *Foster,* 158 N. Y. 587, 593; *Knight* v. *Kitchin,* 237 App. Div. 506, 510).

We see no reason here to modify, refine or vary the general rule that a landlord is under no duty to consent to an assignment of a lease or a subletting, and may withhold consent arbitrarily or unreasonably. (*Penthouse Properties* v. *1158 Fifth Ave.,* 256 App. Div. 685, 691; *Boskowitz* v. *Cohn,* 197 App. Div. 776; *Ogden* v. *Riverview Holding Corp.,* 134 Misc. 149, affd. 226 App. Div. 882.) The plaintiff has suggested that the rule should not be applied to co-operative apartments involving proprietary leases. The courts, however, have held otherwise. In 1886, in one of the earliest cases involving a similar relationship, it was decided in this department that an injunction would issue restraining a tenant-occupant-owner from subletting or assigning his lease without consent. Significantly, the court said, "the propriety of enforcing rules by which the objects of the organzation should be carried out is manifest" (*Barrington Apt. Assn.* v. *Watson,* 38 Hun 545, 548). The same rule has been applied to co-operative apartment buildings in Massachusetts (*68 Beacon St.* v. *Schier,* 289 Mass. 354).

If we adopt the view taken in several cases cited herein, to the effect that stockholders are not unlike partners, the force of the requirement that the consent of the directors or the stockholders be obtained is equally persuasive. We would not think of foisting the substitution of one partner for another upon those remaining, in the face of an agreement that a substitution requires consent. (*People* v. *Herbert,* 162 Misc. 817; Partnership Law, § 40, subd. 7; Sugarman, The Law of Partnership, § 22.)

To the argument that, quite apart from the lease, the restraint against alienation of the stock held by the defendant Gilbert is illegal and unenforcible, there is a brief answer. In *Penthouse* (*supra,* p. 692), this court recognized that the stock ownership was merely incidental to the primary interest in the

long-term proprietary lease, the alienation of which the corporation had the power to restrain, and if there was restraint upon the transfer of stock it was reasonable and appropriate.

In contending that an issue of fact exists, the plaintiff places great reliance upon a suggestion in *Penthouse* (*supra*, p. 692) that justification for a refusal to consent to a transfer, "if justification is required, ordinarily presents an issue of fact". It is clear, as the opinion states, that the question was not before the court. Moreover, the determination there, quite apart from the dicta, sustained a view similar to that of the corporate defendant here, namely, that restraints contained in the plan of organization, the proprietary lease and the corporate provision were all validly and lawfully created and exercised.

It is stated upon the authority of *Globe Woolen Co.* v. *Utica Gas & Elec. Co.* (224 N. Y. 483), that a triable issue exists as to whether Mrs. Gilbert's request was considered by the directors, uninfluenced by Ross' personal animus. We feel that the case cited is inapplicable. There, the person whose motives were in question was a director of both plaintiff and defendant corporations. Here neither Brown, Harris & Stevens, 791 Park Avenue Corporation, nor Ross owed any contractual obligation to Mr. Weisner. Only the corporate defendant was under the duty to act on Mrs. Gilbert's request for its consent, and that was not to the plaintiff. If any of them, not contractually bound to Weisner, committed a wrong against him, his relief, as already stated, would be an action for damages for the tortious conduct.

In sum, it is our opinion that the plaintiff has failed to plead a cause of action against both defendants, sufficient to warrant injunctive relief. Moreover, the plaintiff has failed to establish that he has no adequate remedy at law, that the defendant Gilbert failed to fulfill her contractual duty, and that 791 Park Avenue Corporation was, in anywise, contractually obligated to him. The order should be affirmed, on the facts and the law, and in the exercise of discretion.

BOTEIN, P. J., and STEVENS, J., concur with BASTOW, J.; M. M. FRANK, J., dissents in opinion, in which McNALLY, J., concurs.

Order reversed on the law and in the exercise of discretion, with $20 costs and disbursements to the appellant, and the motion granted, with $10 costs.

Settle order.