Harold L. Crossman, Appellant, *v.* Pease & Elliman, Inc., Defendant, and Fifth Avenue and 60th Street Corporation, Respondent.

First Department, November 30, 1967.

*Harold L. Crossman,* appellant in person.

*David Schwartz* of counsel (*Stroock & Stroock & Lavan,* attorneys), for respondent.

*Per Curiam.* Defendant Fifth Avenue and 60th Street Corporation is the owner of a co-operative apartment house. By written agreement in force during the period covered by the complaint in this action, it appointed Pease & Elliman, Inc. (herein P&E) as its general agent. Among its duties as such agent were to "use its best efforts to sell dwelling-space in the property, as such space may be offered for resale from time to time by tenant-owners of the building." The agency agreement further provided that the agent was given authority and power necessary or advisable to carry out the spirit and intent of the agreement.

In 1964 plaintiff contacted P&E with a view to purchasing an apartment. He desired a seven-room apartment. There were none of that size. P&E pointed out that there were two adjoining apartments, 5E consisting of six rooms, and 5D having three rooms. P&E suggested that plaintiff could purchase both and change the physical layout so that 5E would have seven rooms and 5D two. Plaintiff said that he would have no use for the

two-room apartment. P&E then stated if he purchased the two apartments and made the physical change contemplated, he could sell or rent the two-room apartment.

At the time title to the apartments was in one Fisher, who held them for the sponsor.* Plaintiff signed an application conditioned on the change being made and on his right to sell or rent Apartment 5D, and on certain other, minor physical changes being made by Fisher. P&E also signed the application. Thereafter a contract of sale embodying these terms and also providing for a reallocation of the stock in defendant attributable to each of the two apartments was entered into between plaintiff and Fisher. The contract was subject to approval by defendant's board of directors and P&E. Thereafter P&E notified plaintiff that he had been accepted as a tenant and that he could proceed to make the changes in the apartments. Defendant made the appropriate reallocation of shares. Proprietary leases for both apartments were signed by plaintiff. The proprietary leases each contained a clause that the apartment may not be sublet unless permission was given by an instrument signed by a majority of the directors. Plaintiff entered into possession and made substantial expenditures to effect the changes provided for in the contract.

Thereafter, in December, 1966, with the assistance of P&E plaintiff procured a prospective tenant for the two-room apartment. Approval of the tenant was undertaken by P&E who submitted the relevant data, together with a form of approval, to the directors individually. Five of the seven directors signed the forms indicating approval. Plaintiff was so notified and informed his tenant. Thereupon defendant's president directed that delivery of the directors' consents be withheld and called a meeting of the board. The board decided to submit the question of approval to the stockholders. No question of the desirability of the individual was submitted, but the issue presented was whether any sublease of a two-room apartment should be approved. The stockholders voted against approval.

Plaintiff thereupon brought this action for a declaratory judgment declaring his rights in regard to the said apartments, particularly his right to rent Apartment 5D. In that action he moved for summary judgment. We believe him to be entitled to that relief.

Indubitably plaintiff had the right, by virtue of his contract of purchase, to rent the apartment without restriction. The

---

* Who the sponsor was does not appear in the record other than as the seller to defendant under an agreement that all apartments would be sold when title was conveyed to defendant.

fact that the defendant was not a party to the contract is, under the circumstances, of no significance. It approved of the purchase, countenanced the expenditures made by plaintiff, and accepted him as a stockholder and tenant. Its claim that it did this in ignorance of the terms of the purchase contract, especially that permitting plaintiff to rent the smaller apartment, raises no issue. It is not disputed that P&E not only were defendant's general agents but a specific part of their duties to defendant was to assist in the resale of apartments by the owners. Moreover, the sale to the plaintiff involved performance of acts which could only be done by defendant and not by Fisher, such as the reallocation of stock and granting of permission to change the physical aspect of two apartments. In negotiating for these arrangements, P&E was representing the defendant, as it was generally in assisting Fisher to make the sale. The fact that it was also representing Fisher does not affect this in view of the fact that the dual representation involved no conflict of interest. Permission to rent the apartment was a term of an agreement which P&E was authorized to make. In its capacity as general agent P&E was aware of the terms of the contract of purchase, just as it was as agent for Fisher. Nor was it shown or claimed that defendant's approval of plaintiff as a tenant was other than P&E's approval while acting for defendant. The acceptance of plaintiff by defendant was consequently made with knowledge of the terms of the contract pursuant to which plaintiff became a tenant.

Assuming that the clause in the proprietary lease requiring approval of a sublease is in conflict with the provision of the contract, plaintiff's rights are not affected, and this conclusion is arrived at without the necessity of determining which provision or term controls. Firstly, the proprietary lease plainly provides for the usual situation, where a tenant desires to sublease all or a part of his residential quarters. The situation here is clearly outside the contingencies which the lease provision is intended to govern. A special situation arose for which the only provision is that in the contract. Secondly, the approval called for in the proprietary lease is personal approval of the contemplated sublessee. This is established not only by the lease itself but by the forms for approval adopted by the defendant and employed in this instance. That approval plaintiff had. The only objection to the sublease is on a matter of policy, not to allow a sublease to anyone of a two-room apartment. Such a reservation as to policy is neither provided for in the lease, nor is it one of the general conditions which provide a basis for approval of restrictions on the right to sublease (*Weisner* v.

*791 Park Ave. Corp.,* 6 N Y 2d 426; *Penthouse Props.* v. *1158 Fifth Ave.,* 256 App. Div. 685). Here there was no question of the social desirability or the financial responsibility of the new tenant, but only whether there should be any tenant at all. If the tenants could forbid any leasing of a two-room apartment, they could with equal propriety interdict the sale or occupancy of such an apartment.

The order entered August 17, 1967, should be reversed on the law and summary judgment awarded to plaintiff declaring his rights in accord with the foregoing opinion, with costs and disbursements.

STEUER, J. P., CAPOZZOLI, TILZER, McNALLY and McGIVERN, JJ., concur.

Order entered August 17, 1967, reversed, on the law, with $50 costs and disbursements to the appellant, and summary judgment awarded to plaintiff declaring his rights in accord with the opinion filed herein. Settle order on notice.