AMY K. QUINN, Individually and as Executrix of JOHN J. QUINN, Also Known as JOHN QUINN, Deceased, et al., Respondents, v STUART LAKES CLUB, INC., et al., Appellants.

First Department, May 19, 1981

APPEARANCES OF COUNSEL

*John H. Hartman* of counsel *(Paul F. Eaton* and *Levene, Gouldin & Thompson,* attorneys),* for appellants.

*Ludwig A. Saskor* of counsel *(Smith, Steibel, Alexander & Saskor, P. C.,* attorneys),* for respondents.

OPINION OF THE COURT

BLOOM, J.

Stuart Lakes Club, Inc. (hereinafter the corporation or the club) was organized and incorporated under the laws

of the State of New York back in 1928. It was formed as a stock corporation under the then existing Stock Corporation Law. Its declared purposes were, and purportedly are,

"(a) To purchase, lease or otherwise acquire land and water in New York State.

"(b) To foster, protect and propagate fish and game.

"(c) To promote the interest of legitimate sport with rod and gun.

"(d) To sell or lease lands of the corporation; to erect, construct, alter, maintain, improve, rent, lease, or sell houses and buildings of every description on any lands of the corporation, and to rebuild, alter, improve, rent, lease or sell existing houses and buildings thereon."

The certificate further provided for the issuance of 500 shares of common stock with a par value of $50 each. The office of the corporation was to be in Corbett, Delaware County, and the corporation's duration was to be perpetual. The record discloses that no member was permitted to own more than one share of stock.

Initially the corporation leased approximately 75 acres of land in Delaware County. Subsequently, by deed dated December 23, 1935, this land was conveyed to the corporation. At the height of its membership the club had 40 to 45 members.

Located on the land were two lakes, as was a house which was used by club members on their visits to the club. The club membership consisted primarily of business executives and men in professional life who used it as a retreat from the tensions of daily life and who supported the operations of the club by *ad hoc* assessments, gifts and loans.

As time proceeded, the membership of the club dwindled. At a meeting of the board of directors held on October 27, 1952, article 9 of the by-laws of the club was amended to provide:

"ARTICLE 9

"MEMBERSHIP

"The membership shall consist of not more than twelve (12) active members, and such honorary members as the

Board of Directors may from time to time elect. New members shall be elected by a majority of the Board of Directors, and shall receive one share of stock as evidence of membership.

"When any member ceases to be a member of the Club, either by death, resignation or otherwise, his stock shall be considered void and the certificate returned to the Treasurer for cancellation. If such certificate is not returned to the Treasurer promptly, then the Treasurer shall make a written request for such return by registered mail sent to the last known address of such person, and if the certificate be not then received by the Treasurer within fifteen days thereafter, such certificate shall then be marked 'Void' on the stock book of the Club, and same shall be considered as cancelled with the same effect as if such certificate had been surrendered by such person as required by these By-Laws.

"Any member of the Club may be expelled for cause by two-thirds of the membership of the Board of Directors. All members so expelled shall be advised in writing as to the cause for expulsion."

Immediately prior to October 23, 1969, the club membership had been reduced to three members, James A. Crawford, the individual defendant, John Quinn and Charles Treacy. On October 23, 1969, Quinn was involved in an automobile accident by consequence of which he died. Treacy died in 1971 leaving Crawford the sole surviving member.

Plaintiff, Amy K. Quinn, individually, as sole beneficiary under the will of John Quinn, together with Josephine Rooney, her coexecutrix under that will, were called upon to surrender the share of stock of John Quinn. As in the case of the other members of the club who had died, a tender of $50, the par value of the stock, was made to them. They refused to surrender the share of stock and in 1973 they brought this action seeking a declaration that the provision limiting transferability of the stock of Stuart Lakes Club, Inc., is ineffective, void as against public policy, and unenforceable, and further declaring that Amy Quinn, as sole beneficiary under the will of her father, succeeded to

his stock interest and is entitled to all the perquisites of membership in the corporation. She demanded that she be listed on the books of the corporation as a stockholder and that defendants be enjoined from disposing of the corporate property.

After issue was joined plaintiffs moved for summary judgment. Defendants cross-moved for the same relief. Special Term granted plaintiffs' motion and denied defendants' cross motion. On appeal to this court we modified to the extent of denying plaintiffs' motion for summary judgment *(Quinn v Stuart Lakes Club*, 64 AD2d 556), noting the existence of issues of fact required to be resolved by a trial. Following discovery, defendants renewed their motion for summary judgment. Special Term denied that motion. Thereupon the matter was tried. The trial court granted judgment in favor of plaintiffs. We modify to declare that the purposes of the corporation have failed, that article 9 of the by-laws of the corporation, insofar as it requires a surrender of stock upon the death of a member is no longer effective to accomplish that purpose and the judgment embodying these declarations shall be without prejudice to the right of any party claiming interest in the corporation to bring a proceeding for dissolution of the corporation and distribution of its assets. In so doing we expressly refrain from defining the class of potentially interested parties. We think that issue would best be left to the hearing court if and when a dissolution proceeding is brought.

Initially, plaintiffs argue that a restriction on the power of alienation of a certificate of stock is ineffective except as against a person with actual knowledge (Uniform Commercial Code, § 8-204, formerly Personal Property Law, § 176), and then only if reasonable in relation to the lawful purposes to be attained *(Allen v Biltmore Tissue Corp.*, 2 NY2d 534; *Penthouse Props. v 1158 Fifth Ave.*, 256 App Div 685). While concededly, some legend sufficient to put the transferee on notice that a restriction exists and notifying him where its full text could be found would be adequate to meet this requirement *(Allen v Biltmore Tissue Corp.*, 2 NY2d 534, 540, *supra)*, no such notice was here noted on the share possessed by John Quinn nor is there

anything to indicate that plaintiffs had knowledge of the restriction prior to the demand that it be surrendered.

Defendants' answer is that equity must look to the realities and not to the form *(Rensselaer County Agric. & Hort. Soc. v Weatherwax,* 255 NY 329; *Penthouse Props. v 1158 Fifth Ave.,* 256 App Div 685, *supra).* Indeed, when this matter was previously before us we so indicated. *(Quinn v Stuart Lakes Club,* 64 AD2d 556, *supra).* And, say defendants, the reality is that the club conducted itself as a membership organization throughout its life* and must be so treated in this action. Moreover, they contend that plaintiffs are estopped to assert that article 9 of the by-laws is invalid because John Quinn, through whom they claim to derive title to the share of stock, was secretary of the club at the time that article 9 was adopted and actively participated in its adoption. Moreover, as secretary he was prime mover in securing the surrender of shares from the representatives of deceased members during his service as an officer of the club.

We think that both sides have missed the essential point at issue. When the last survivors of the club, in practical effect, closed the membership rolls to new members and adopted article 9 of the by-laws as it presently exists, they constituted the result a survivorship lottery. Indeed, in our prior determination we described it as "a form of tontine". Seemingly, the very purpose of precluding expanded membership was to insure that the last survivor would inherit the house, the land and all other assets of the club. This form of death gamble, bottomed on the principle that the last survivor shall fall heir to the corporation, ought not to be encouraged nor expanded beyond limits of tontine insurance which has hitherto been recognized by law (cf. *Uhlman v New York Life Ins. Co.,* 109 NY 421; 44 CJS, Insurance, § 27, pp 488-489). Accordingly, we hold that article 9 of the by-laws of the club is not to be given effect. With this provision eliminated, and the membership rolls

---

* Plaintiffs note that this assertion is not wholly true. The corporation regularly paid the franchise taxes due to the State, something which would not have been required of a membership corporation unless it engaged in some business activity *(People ex rel. West Side Tennis Club v Browne,* 270 App Div 1061).

closed, it becomes impossible to fulfill the corporate purposes. There is, therefore, no reason for continuation of the corporate life of Stuart Lakes Club, Inc. It follows that, since the purposes of the corporation have failed, there is no justification for its continued existence and a proceeding to terminate its existence may be brought by any party claiming an interest in the corporation.

Accordingly, the judgment of the Supreme Court, New York County (BOWMAN, J.), entered November 20, 1980, should be modified without costs on the law, the facts and in the exercise of discretion to declare (1) that the purposes of the corporation have failed; and (2) article 9 of the by-laws of the corporation is ineffective to require a surrender by the representative or representatives of a deceased member of the share of stock held by such deceased member, and the matter is remanded for the entry of a judgment in conformity therewith. Such judgment shall be without prejudice to the right of any party claiming an interest in the corporation to bring a proceeding for dissolution of the corporation and distribution of its assets.

KUPFERMAN, J. P., BIRNS, SULLIVAN and SILVERMAN, JJ., concur.

Judgment, Supreme Court, New York County entered on November 24, 1980, modified, without costs and without disbursements, on the law, the facts and in the exercise of discretion to declare (1) that the purposes of the corporation have failed; and (2) article 9 of the by-laws of the corporation is ineffective to require a surrender by the representative or representatives of a deceased member of the share of stock held by such deceased member, and the matter remanded for the entry of a judgment in conformity therewith, such judgment to be without prejudice to the right of any party claiming an interest in the corporation to bring a proceeding for dissolution of the corporation and distribution of its assets.