Milton Feist et al., Respondents, *v.* Fifth Avenue Bank of New York, as Trustee, Appellant, Impleaded with Another.

Argued February 27, 1939; decided April 11, 1939.

*Albert Stickney, Hersey Egginton, Frank C. Wachsmuth* and *Leon Schaefler* for appellant. The submission did not lose the character of a justiciable controversy because facts are included which may fall within the category of evidentiary as distinguished from ultimate. (*Title Guarantee & Trust Co.* v. *Mortgage Comm.*, 271 N. Y. 302; 273 N. Y. 415; *Rhine* v. *New York Life Ins. Co.*, 248 App. Div. 120; 273 N. Y. 1; *Whittemore* v. *Equitable Trust Co.*, 250 N. Y. 298; *Matter of Clark*, 257 N. Y. 132.) In respect to each of the two questions which the Appellate Division

was asked to decide, the ultimate facts were fully presented to the court, and the only conclusions necessary to be drawn from those conceded facts were the questions of law, first, whether the investment made by the trustee was within the authorization of the deed of trust, and second, whether the action of the trustee was a prudent one. (*Schoellkopf* v. *Marine Trust Co.*, 267 N. Y. 358; *Hoffman Bros., Inc.*, v. *Commercial Union Assurance Co.*, 221 App. Div. 167; 248 N. Y. 578.)

*Edwin W. Cooney* and *Edward L. Hunt, Jr.*, for New York State Bankers Association, *amicus curiæ*.

*A. S. Gilbert* and *Godfrey Cohen* for respondents.

LOUGHRAN, J. This case having been submitted on agreed facts pursuant to sections 546–548 of the Civil Practice Act, the Appellate Division was without power to draw inferences of fact. The question presented is whether the judgment correctly defines the effect of the stated facts as matter of law, not whether there was any evidence upon which supporting findings could have been made. (*Lafrinz* v. *Whitney*, 233 N. Y. 107, 110; *Title Guarantee & Trust Co.* v. *Mortgage Commission*, 271 N. Y. 302.)

The appellant bank is the trustee under an agreement of trust made with it by Leo Feist on October 4, 1924. This agreement authorized investment of the trust principal " in bonds of the United States, State of New York, City of New York, or guaranteed mortgages on improved real estate in the City of New York." On June 3, 1931, the bank acquired for the trust a $60,000 participation in a $90,000 guaranteed mortgage on 319–21–23 East Forty-fifth street, Manhattan, city of New York.

When the validity of that transaction was challenged by the parties beneficially interested in the trust this controversy was framed as a medium for the settlement of two questions, viz.: " (a) Whether premises 319–21–23 East 45th Street covered by the mortgage was improved real estate as required by the trust agreement, and (b) Whether

the investment by the Trustee on June 3, 1931, in the participation in the mortgage on 319–21–23 East 45th Street was a prudent investment." Both questions have been answered in the negative by the judgment below.

(1) The extrinsic facts bearing on the first question are stated in the submission as follows: " The premises 319–21–23 East 45th Street consisted of three parcels totaling seventy-five feet in width, front and rear, by one hundred feet in depth on each side, situated on the north side of 45th Street, commencing three hundred feet west of the northwest corner of First Avenue and 45th Street. * * * There were erected on this land * * * three tenement houses * * * built prior to 1902, since which date the construction of tenements of this character has been prohibited by the Tenement House Law. The tenements were of the type known as ' cold water flats.' They had no heat or central hot water. There were five floors in each building. Each floor was divided into two apartments of six rooms each, making ten apartments in each building, and a total of thirty apartments in all. In the hall of each floor was a toilet for the use of the two families occupying each floor. The flats were occupied by poor people. The rents ranged from $20 to $25 a month for each apartment of six rooms. * * * The buildings were in fair-to-good shape for buildings of that type and age. The apartments were of the railroad type, with three interior bedrooms, each having a window on a small light court approximately five feet wide by ten feet long, which also served as an air shaft. * * * The three buildings on the premises * * * were not adequate improvements for the land. * * * The net income from these three buildings in February, 1931, and to and including June, 1931, was at the rate of $1,400 per annum, after payment of taxes and all other carrying charges, but before allowing for the payment of interest on the $90,000 mortgage, which amounted to $5,400 per annum, making an annual deficit of $4,000 * * *. The total assessed valuation of the premises for 1931 was $112,500, of which the land was valued at $88,500 and the buildings at $24,000."

We think the phrase " improved real estate " must here be taken in the sense in which the words are usually employed in respect of similar investment situations, *i. e.*, land which at the given time is substantially enhanced in value by some probably durable structural improvement. In this aspect of the matter the foregoing recital of agreed facts is uncertain and incomplete. Market values of the land — with the buildings and without them — are not stated. To say of buildings that they were in relatively fair-to-good shape — or that they were not adequate improvements — is not to state any ultimate conception. The facts as stated are merely evidentiary and lead to no clear, undeniable deduction respecting the status of the mortgaged premises as improved real estate. This issue, therefore, should not have been determined in the present controversy. (Cf. *Marx* v. *Brogan*, 188 N. Y. 431.)

(2) Nor did the submission supply a sufficient basis for a direct conclusion of law as to whether or no the investment in question was a prudent one.

In 1931 the premises were appraised by a large real estate concern at $150,000, of which $135,000 was allocated to the land and $15,000 to the buildings. This concern considered the basic value of the property to lie in its availability for high class improvements such as apartment houses and large store and loft buildings which had been erected in the vicinity. The appraisers assigned a value of $15,000 to the buildings only because they believed that, pending the development of the property, these structures would produce some net income, which to the extent thereof would reduce the cost of carrying the property. Other factors entering into this appraisal were that the property was strategically located in the heart of the business activity of the city of New York, and that the locality was unrestricted and the plot large enough to carry a building of almost any height. This appraisal used a rate less than the rate at which sales and investments were being made in the immediate neighborhood.

Titles to a number of other properties in the neighborhood were either in the corporate mortgagor or in its principal stockholders, who were reputed to be financially responsible. The obligor bond of the corporate mortgagor was guaranteed by a collateral bond of these stockholders. The insurance company which guaranteed the mortgage was reputed to be well managed, conservative and sound.

All these additional agreed facts are purely evidentiary. So, too, is the stipulation that, " save in cases where the will or trust agreement provided otherwise, land value was at the time of the mortgage investment, a paramount factor in determining the desirability of a particular mortgage investment by many savings banks and fiduciaries in and about New York city." (See 1 Wigmore on Evidence [2d ed.], § 461.)

The first recital of the trust agreement declares the desire of the grantor " to make suitable provision for the maintenance and comfort of his invalid son Milton Feist," the life beneficiary. Another agreed fact is that Milton Feist has continued to be an invalid to the knowledge of the trustee bank.

Taking the submission as a whole, we have again on this branch of the case only a debatable question of ultimate fact, that is to say, the question whether this investment (when judged by the applicable legal standards) was in fact a prudent one under all the circumstances. (See *King* v. *Talbot*, 40 N. Y. 76; Thayer, Preliminary Treatise on Evidence, p. 250.) This question should not have been here composed as matter of law.

The judgment should be reversed, without costs, and the submission dismissed without prejudice to a new submission or a new action.

LEHMAN, O'BRIEN, HUBBS and RIPPEY, JJ., concur; CRANE, Ch. J., and FINCH, J., taking no part.

Judgment accordingly.