MANHATTAN STORAGE AND WAREHOUSE COMPANY et al., Respondents, *v.* MOVERS AND WAREHOUSEMEN'S ASSOCIATION OF GREATER NEW YORK, INC., et al., Appellants.

Argued June 15, 1942; decided July 29, 1942.

*William F. Bleakley, Roswell P. C. May* and *Arthur P. West* for Movers and Warehousemen's Association of Greater New York, Inc., et al., appellants.

*Harry Sacker* for Joseph Schorr, as President, and John J. McKenna, as Secretary-Treasurer of Local 814 of International Brotherhood of Teamsters, Chauffeurs, Stablemen & Helpers of America, appellant.

*James D. Wise, George J. Kraft* and *Robert M. Bozeman* for respondents.

LEHMAN, Ch. J. On April 15, 1940, the defendant union entered into an agreement with the defendant associations of employers, which is known as " the Collective Labor Agreement of the Moving and Storage Industry of New York, N. Y. 1940–1942." The plaintiffs are members of the Movers & Warehousemen's Association of Greater New York, Inc., one of the defendant associations of employers. They are parties to the agreement, and they recognize that they are bound by all its terms and provisions so far as these provisions are lawful and do not offend the public policy of the State.

The agreement, in section I, establishes the rates of pay or wages, the hours and the working conditions of persons employed in the

business of moving and of storing household goods. The plaintiffs do not challenge the validity of these provisions. The agreement goes further. In section II it provides that " unfair trade practices " there described " should be eliminated from the Industry," and that in order to eliminate such " unfair practices in the Industry for the benefit and protection of labor, the public and the Industry, and in order to create a joint agency of employers and employees to aid and assist the Interstate Commerce Commission of the United States and the Public Service Commission of the State of New York in the effective administration and enforcement of the Motor Carrier Act, 1935 and the New York Motor Truck Act, * * * the Moving and Storage Stabilization Committee * * * shall be and is hereby created * * * with the powers and duties hereinafter set forth."

Among the " unfair practices " which the parties agreed should be " eliminated " is: " Quoting or obtaining or attempting to secure a price for any service which shall be less than the sum of the wages necessary under Section I of the Agreement and of reasonable items of expenses and overhead entering into the cost of operation." Included in the powers and duties of the Stabilization Committee is the duty " to obtain from employers and from other sources reports of operating costs as a basis for the administration of Section II of the agreement." It must " receive and investigate complaints of violations by employers of the Agreement " and it may " exclude any employer from any or all rights or benefits under this Agreement for the violation of this Agreement or for the failure to comply with a decision or determination of the Committee." In the exercise of these powers the Committee has, after investigation and hearing, established " schedules of basic costs " which must be used in calculating the minimum prices for service which may be quoted or charged. The parties have agreed that " said basic costs are, on the average, not higher than the rates and charges for the same services filed by the employers subject to the Collective Labor Agreement with the Interstate Commerce Commission and the Public Service Commission of the State of New York pursuant to Federal and State statutes."

The plaintiffs " contend that the provisions of Section II of the Collective Labor Agreement and the acts of the Stabilization

Committee thereunder which fix or tend to fix prices relating to moving and storage of household goods are invalid and unenforceable." The defendants reject that contention, and defendant union has threatened to call a strike because of such non-compliance by the plaintiffs. Upon an affidavit of the president of the Manhattan Storage & Warehouse Company, one of the plaintiffs, that the controversy is real, the controversy has been submitted to the Appellate Division pursuant to the provisions of section 546 of the Civil Practice Act, upon a statement of agreed facts. Both sides ask the court to determine whether the provision of the collective labor agreement prohibiting employers subject to the agreement from " quoting or obtaining or attempting to secure a price for any service which shall be less than the sum of the wages necessary under Section I of the agreement and of reasonable items of expenses and overhead entering into the cost of operations is lawful;" whether " the schedule of minimum prices as set forth in the schedule of Basic Costs * * * prescribed by the Stabilization Committee * * * are lawful; and whether plaintiffs are lawfully bound by said portions of the Collective Labor Agreement."

The Legislature in the exercise of the police power and in order to promote the public welfare has provided in section 340 of the General Business Law (Cons. Laws, ch. 20) that " 1. Every contract, agreement, arrangement or combination whereby * * * competition or the free exercise of any activity in this state in the manufacture, production, transportation, marketing or sale in this state or in the supply or price of any such article, product, commodity, service, transportation or trade practice is or may be restrained or prevented * * * is hereby declared to be against public policy, illegal and void. 2. The provisions of this article shall not apply to cooperative associations, corporate or otherwise, of farmers, gardeners, or dairymen * * * nor to contracts agreements or arrangements made by such associations, nor to bona fide labor unions." Any person who makes or attempts to make or enter into such contract or combination or who within the State does any act pursuant to or " in, toward or for the consummation thereof " is guilty of a misdemeanor punishable by a heavy fine or imprisonment. (§ 341.) The Attorney-General may bring an action to restrain and prevent any act which is declared illegal by the statute. (§ 342.)

Where there has been a submission of a controversy upon stipulated facts a determination of the controversy must be based upon those facts and no others; if the facts which have been stipulated are insufficient for the determination of the controversy, the submission must be dismissed. The court may not reject or disregard any fact which is relevant, nor may it find any fact not included among those stipulated. That is true even where the finding of an additional fact is the result of an inference based upon the stipulated facts, or some of them, which a trier of the fact migh reasonably draw. By the nature of the proceedings the function of the court is confined to the determination of the consequences which as matter of law flow from the stipulated facts; exercise of the judicial function of determining the facts is excluded. (*Feist* v. *Fifth Avenue Bank*, 280 N. Y. 189; *Title Guarantee & Trust Co.* v. *Mortgage Commission*, 271 N. Y. 302.)

The parties to the submission have stipulated that the defendant union is a " *bona fide* " union. They have stipulated that a " cut throat " competition long existed in the industry and that in order to meet such competition, many firms " in violation of the contracts * * * which they had entered into with defendant Union " felt constrained " to make individual arrangements and agreements with their employees who were members of defendant Union, whereby said employees agreed to accept rates of pay, substantially less than those provided in the contracts made between the defendant Union and such firms, and to work upon terms and conditions different from and far less favorable than those contained in said contracts." The parties have stipulated, too, that in other respects also, such competition adversely affected the wages and working conditions of employees and induced some employers to attempt " to avoid the obligations imposed on them by State and Federal law respectively to maintain workmen's compensation insurance for their employees and to pay social security and unemployment insurance taxes."

The statement in the stipulation of the agreed " facts upon which the controversy between them depends " extends over many printed pages in the record. Our summary of the facts is far from complete. We content ourselves with stating our conclusion that the stipulated facts are intended to form the foundation for the conclusion that the provision of the contract which is questioned was

reasonable and was calculated to remedy conditions which were harmful to employers, to employees and to the general public. Indeed, the parties have stipulated and agreed that " the only means known whereby compliance with and performance of the agreements made between the Union and employers of its members    *    *    * could be secured and the fraud and deception on customers eliminated was to establish prices for services which would be equal to the cost of rendering such services." The plaintiffs' challenge of the legality of the provisions of the agreement intended to compel the establishment of such prices is not based on any contention that the provision was not in good faith intended to remove an existing evil, or was not reasonably calculated to promote the interests of employees, of employers and of the general public. They have by their stipulation sought to bar such question. They maintain that regardless of the good intentions of the parties and the benefits that might result from the challenged provision, it does restrain competition in violation of section 340 of the General Business Law, and is, for that reason, unlawful, citing *United States* v. *Socony-Vacuum Oil Co.* (310 U. S. 150). The exemption of " *bona fide* labor unions " contained in the statute was not intended, the plaintiffs urge, to sanction such an agreement.

The Appellate Division did not, however, decide that question, nor, in our opinion, could it properly decide such a question in these proceedings. All the judges of the Appellate Division apparently agreed with the statement in the majority opinion that the exemption of " *bona fide* " labor unions in " section 340 does not give immunity to the contracts or agreements of labor unions unless they are confined to some legitimate labor activity." The prevailing opinion adds that: " To grant labor unions an exemption so that they may enter into agreements to enforce monopolistic aims of employer groups by fixing the prices to be charged the public for services or commodities and thus to stifle competition would be to destroy entirely the anti-monopoly statutes." (262 App. Div. 332, 335.) From the provisions of the contract, and in spite of the " agreed facts " upon which " the parties had stipulated " that " the controversy between them depends," the Appellate Division found in the provisions of the contract itself a basis for the conclusion that " despite the *thinly veiled attempt to conceal the real purpose*    *    *    *

under this agreement the stabilization committee was authorized to fix prices to be charged in the industry " (italics are new), and for that reason the Appellate Division held that the contract was unlawful.

We do not decide, or even consider, whether a court authorized to determine questions of fact might find in the terms of the contract sufficient ground for an inference that the real purpose of the contract was to " enforce monopolistic aims of employer groups " though the parties in the contract as well as in the stipulation of agreed facts may have tried to conceal that purpose. The Appellate Division has not, however, as we have said, power to determine any question of fact and to draw such an inference where the parties have submitted a controversy under a stipulation that the controversy *depends upon the agreed facts*. The finding of the Appellate Division demonstrates forcibly that this controversy cannot properly be determined upon such a submission.

An action for a declaration of " rights " and " legal relations " in accordance with section 473 of the Civil Practice Act serves a legitimate purpose where all persons who are interested in or might be affected by the enforcement of such " rights " and " legal relations " and who might question in a court the existence and scope of such rights, are parties to the action and have opportunity to be heard. As to persons who are not parties a declaratory judgment would be a mere academic pronouncement without juridical consequence, but which might be embarrassing if attempt is made thereafter to enforce these rights in legal proceedings to which they are parties. A court may, and ordinarily must, refuse to render a declaratory judgment in such case. (*Post* v. *Metropolitan Casualty Ins. Co.*, 227 App. Div. 156.)

Such considerations have peculiar weight in this case. The employers' association of which these plaintiffs are members and the labor union have voluntarily entered into an agreement binding on both, except in so far as it may violate the public policy of the State established by the Legislature to promote the public welfare. Both parties to the contract may believe that enforcement of the contract will promote their interests — indeed we might assume that otherwise they would not have made the contract. In this action they are in effect asking the court to determine whether or not

their agreement, entered into for the promotion, primarily, of their private interests, is unlawful because it conflicts with a public policy declared by the State to safeguard the interests of the public; yet the State is not a party to the proceedings and no party to the proceedings is authorized to defend the interests of the public. In the General Business Law the Attorney-General is expressly directed to prosecute, and to seek injunctions against, violations of the statute. Though in legal theory a declaration that the agreement is lawful would not be binding in a criminal or civil proceeding initiated by the Attorney-General to punish or restrain a violation of the statute, yet its practical effect, and perhaps its intended purpose, would be to forestall and render futile such a proceeding. Even a declaration that the agreement is unlawful might be embarrassing, for it would be in practical effect a judicial mandate to the Attorney-General to enforce the judicial pronouncement of illegality effective by proceeding, initiated in accordance with the statute — though he has had no opportunity to present to the court factual considerations or legal arguments which might dictate a conclusion that the agreement is lawful and promotes the public interest. For these reasons it is plain that no action may be maintained for a declaration of the legality of the challenged provision of the agreement between the defendant union and the defendant associations of employers unless the Attorney-General is a party to it.

The same reasons with even more compelling force constrain the conclusion that the controversy between the plaintiffs and the defendants may not be determined upon a statement of agreed facts. Parties to a controversy in which no question of public policy is involved and which affects only private rights in which only the parties to the controversy are interested, may properly stipulate that the controversy depends upon facts upon which the parties have reached agreement. Where the controversy concerns rights which the parties may by agreement create, limit or define, they may by agreement concede facts which perhaps could not be proven, and restrict as they choose the matters upon which they have not agreed and upon which they seek the arbitrament of the court. Where, on the other hand, the power of the parties to create, limit or define their rights and legal relations is restricted by law in

the public interest, the parties cannot by stipulation or agreement remove or loosen the restriction. If, in truth, the contract is not made by a " bona fide " union and is not intended to promote purposes of the union sanctioned by law, but is a mere cover for the promotion of ends which are prohibited, no stipulation of the parties can bar inquiry by the officers of the State or by the courts, or make lawful an agreement calculated to violate the declared public policy of the State. If, in truth, the agreement be, as the Appellate Division has suggested, a " thinly veiled attempt ·to conceal the real purpose " of authorizing the employer group to fix prices, no stipulation of the parties can be permitted to serve as an effective curtain for inherent illegality.

Nothing that we have said herein should be construed as an indication of any opinion by this court that in this case the statement of agreed facts does or does not faithfully and accurately present the true situation, or of any opinion whether, upon a different record and in a different form of proceeding, the decision of the Appellate Division might be correct. We·repeat that in any event the finding of the court demonstrates that the controversy cannot properly be decided in this proceeding, and for that reason we have not considered any question of law involved directly or indirectly in the controversy.

The judgment of the Appellate Division should be reversed and the submission dismissed, without costs.

LOUGHRAN, FINCH, RIPPEY, LEWIS, CONWAY and DESMOND, JJ., concur.

Judgment reversed, etc.