Matthew M. Levy, J.
Alleging her marriage to, and adultery on the part of, the defendant, the plaintiff instituted this action for divorce and asked to be awarded custody of the minor child of the parties, support for herself and the .child (pendente and permanent), and counsel fees. The defendant, in his answer, in addition to denials of material allegations of the complaint, pleaded an affirmative defense, in which he alleged that the plaintiff had been previously married to one Thomas Coe and assertedly divorced, that her divorce was procured in Mexico, and that the divorce was void in view of the facts that Coe ( a nondomiliciary of Mexico) was not served with process there and did not appear in the divorce action in Mexico. The defendant, in his answer, also interposed a counterclaim in which he asked for custody of the child and that the child be allowed to live with his paternal grandmother.
In that answer, the defendant also alleged (in a fashion rather unusual for a pleading) that ‘1 In the event that the marriage between the plaintiff and defendant is sustained, then defendant intends to set forth a proper counterclaim for separation and/or divorce on the grounds of cruel and inhuman treatment, abandonment and adultery, respectively, and to that end incorporates herein by reference to all of the affidavits and exhibits submitted in opposition to plaintiff’s motion for temporary alimony and counsel fees herein The defendant demanded judgment ‘ ‘ against the plaintiff dismissing the complaint on the ground that the parties are not married; awarding custody of [the infant son] to the defendant; and, in the alternative * * * on the counterclaim for a divorce on the grounds of adultery and/or separation on the grounds of cruel and inhuman treat *1072 ment, abandonment and adultery”. No motion or objection appears to have been made by the plaintiff in respect of this pleading.
At the commencement of the trial before me, the plaintiff moved for leave to discontinue her action for divorce. The motion was consented to by the defendant upon condition that a prior order of the court, providing for alimony pendente lite and counsel fee, be vacated — to which the plaintiff agreed. The defendant also stated that he had no objection to the present custody of the child remaining with the plaintiff and that he would not oppose an application by the plaintiff for custody.
On consent, the defendant served an amended and supplemental answer at the trial. Therein, he alleged that the plaintiff journeyed to Mexico and obtained a divorce from Coe prior to marrying the defendant; that Coe did not appear in that action and that the divorce was of no force and effect, that the plaintiff and the defendant were married in Mexico on the same day of the divorce, that the child of the present parties was thereafter born in due course; that following the commencement of the present action and in order to validate the divorce, Coe, the former husband of the plaintiff, entered an appearance and submitted to the jurisdiction of the Mexican court by power of attorney, dated March 24, 1965, whereupon the original divorce decree, dated August 3,1959, was amended by order, dated April 3, 1965, to reflect Coe’s appearance. The defendant’s amended answer further alleged that the plaintiff and this defendant entered into their marriage ceremony in good faith and without knowledge as to the effect — or, rather, the lack thereof — -of the original decree of divorce; and, indeed, that the plaintiff instituted the instant action for divorce alleging a valid marriage between her and the defendant at all times; and that on June 7, 1965, the plaintiff entered into a marriage ceremony with a third male, referred to in the counterclaim as John Doe.
In his amended answer, the defendant seeks a declaratory judgment that he is the lawful husband of the plaintiff; that the third “marriage” of the plaintiff — with Doe — is void; that the colorable Mexican divorce decree of August 3, 1959, was validated effective April 4, 1965; that the child of the parties, born on May 6, 1960, is the legitimate issue of the plaintiff and the defendant; and that the plaintiff should have custody of the said child and the defendant have visitation rights. Further relief requested by the defendant is that the plaintiff be enjoined from taking part in adoption proceedings with reference to the child without the defendant’s consent. On the other hand, the plaintiff urges a determination to the effect (1) that she and the *1073 defendant were never wife and husband — either at the time of their marriage ceremony after the void ex parte Mexican decree against her then husband Coe, which she asserts she obtained with the defendant’s advice and participation, or at the time subsequent thereto when Coe appeared in the Mexican suit and the decree was amended accordingly; (2) that the child of the parties is her legitimate issue, but not the legitimate issue of the defendant; (3) that the plaintiff’s present marriage to Doe is valid; and (4) that the matter of the child’s adoption by Doe or anyone else is not now before this court, and is in any event a matter for the Surrogate.
The plaintiff denied certain material allegations in the amended answer. However, at the trial, the parties entered into an agreed statement as to some of the facts, as follows:
“ 1. Plaintiff Jane Roe (nee Jane Coe) obtained a Judgment of Divorce on August 3,1959 from one Thomas Coe in the State of Chihuahua, Republic of Mexico by appearing there without the consent or other appearance of Thomas Coe, her husband. Defendant’s Exhibit ‘ B ’. Jane Coe resided in New York City at that time and Thomas Coe was domiciled in the State of New Jersey.
“ 2. On the same day and at the same place as stated in Paragraph 1 above, plaintiff Jane Roe went through a marriage ceremony with the defendant Richard Roe.
“ 3. That on May 6, 1960, Richard Roe, Junior, was born, being the issue of Jane and Richard Roe.
‘ ‘ 4. That by power of attorney, dated March 24,1965, Thomas Coe appeared and submitted to the jurisdiction of the Mexican Court and the original divorce decree as stated in Paragraph 1 above was amended by Order dated April 3, 1965 to show such appearance. Defendant’s Exhibit ‘ C ’.
“ 5. That on June 7, 1965, Jane Roe married another person in New York City.”
The action is not now one for divorce by plaintiff wife against defendant husband. What started off as one type of matrimonial action (a routine suit for divorce, I could say) in which the plaintiff was the protagonist, ended consensually in being another type (a much broader action for a multiple declaratory judgment, I should say) in which the plaintiff became the contestant. By agreement of the parties, the proceeding has been metamorphosed into a counteraction by defendant husband against plaintiff wife, in which affirmative relief is prayed for involving not only the plaintiff wife, but three other persons.
Neither first nor third husband nor child begotten by the second was made a party to the suit or countersuit — in its *1074 original or amended status. Preliminarily, therefore, an issue — not projected by the parties — arose in my mind as to whether Coe, Doe and Roe, Junior, respectively, are necessary parties to this action. Rather than dispose of this issue on my own (cf. Concession Consultants v. Mirisch, 355 F. 2d 369, 371), I informed counsel of my problem and asked for their positions and their views.
The plaintiff responded that, in the circumstances disclosed by this record, the first husband is not a necessary party, and in this the defendant concurred. As to the third husband, the plaintiff’s contention is that the court lacks jurisdiction to determine the validity of the marriage between the plaintiff and Doe in the absence of Doe as a party and that the counterclaim should be dismissed. The defendant does not dispute that Doe is a necessary party, but contends that the defect in jurisdiction has been waived — since the plaintiff did not raise the point until after it was presented to counsel by me. The defendant suggests that, since the attorney for the plaintiff offered (when I initially brought this issue to the fore) to file an appearance for Doe, that procedure should be adopted, or, in the alternative, that the defendant should be given leave to apply for an order directing due joinder of the necessary parties, and upon such joinder, that I should reopen and continue the trial. As to the infant, the defendant argues that (since both parents were parties and appeared and the issue was not raised before or during the course of the trial), it is unnecessary now to direct that the child be made a party or that a special guardian be appointed to protect his interests.* On the other hand, in view of what her counsel describes as the ‘ ‘ bitter struggle herein in which the mother attacks the legitimacy of her son ”, the plaintiff takes a definitely contrary position — stating in her brief that ‘ ‘ The legitimacy of the infant is the main issue in this action ”.
Taking up the issue of necessary but presently absent parties in the reverse order in which I have hereinbefore enumerated them, I shall first consider whether the child is such a party.
*1075 At the outset, as to this party, let me say that the matter of adoption of the child is not per se now before me, as this is not an adoption proceeding (Constitution, art. VI, § 12, subd. d; § 13, subd. b, par. [3]; Domestic Relations Law, § 114; Family Ct. Act, § 641). But the issue of legitimacy is specifically involved in this action and the Supreme Court has undoubted jurisdiction (Domestic Relations Law, § 145, formerly Civ. Prac. Act, § 1135; see, conversely, as to the jurisdiction of the Surrogate to decide and declare legitimacy when involved in a decedent’s estate matter, Matter of Newins, 16 A D 2d 436, affd. 12 N Y 2d 824).
It will be recalled that before Roe, Jr., was born, the marital developments were as follows: (1) his mother had been married to Coe in New Jersey; (2) she had obtained an ex parte Mexican divorce from Coe; (3) a marriage ceremony was performed in Mexico between her and Roe on the same day and immediately after the Coe divorce. Thus, at the time of the birth, the divorce was at the least prima facie invalid (Rosenstiel v. Rosenstiel, 16 N Y 2d 64, 72), and the second marriage at the most of color-able validity (Connors v. Connors, 33 Misc 2d 343; cf. Cave v. Cave, 285 App. Div. 897). And later, shortly after the first husband’s appearance in the Mexican divorce suit, in an endeavor to validate the divorce decree granted there, the mother was married again, but not to the child’s father — thus precluding the possibility that whatever invalidity there might have been ab initio in the marriage of which the child was an issue (and which resulted in his bastardization) was cured by a marriage ceremony which ipso facto legitimatized him (Domestic Relations Law, § 24).
It is urged by the defendant that, since CPLR 1201 provides that an infant may appear by “ a parent or, if the parents are separated, by the parent or other relative having legal custody ’ ’, and since both parents are parties and appeared in the action, the requirement of the infant’s appearance in the suit has been complied with. I do not agree. In fact, the infant has not been named as a party, has had no independent representation, and the parent who has custody of the child is the one who .seeks a declaration that the infant is the illegitimate offspring of the other parent. Nor is that all. The father, who does assert total legitimacy, formally states that custody should be awarded the mother. And the mother says, in her post-trial brief, that the “ father of the infant seeks to have the issue declared legitimate although he does not want custody nor has he contributed anything to the support of the infant for [many] months and does not intend to contribute anything in the near future. He wants the stepfather to support the said issue
*1076 ■Section 1201 also states, in a provision not cited by counsel, that a “ person shall appear by a guardian ad litem if he is an infant * * * and the court so directs because of a conflict of interest or for other cause ”. I cannot but so direct, for there is an obvious conflict of interest.
In the tangled and tortuous marital situation in which these adults have placed themselves, the absent infant cannot be made to suffer or bear the brunt of the parental battle. If this were an ordinary matrimonial action — in which the infant’s status (including the present and prospective impact upon him psychologically and property-wise) were not involved, but rather his custodial care and financial maintenance until majority — there would be no legal need for his direct participation as a party in the litigation. The court would and could undertake adequately to protect the interests of its ward. But where, as here, more is involved than custody and visitation alone, and a definitive declaration as to the legal status of the child is sued for and contested, I am of the opinion that due process would require that he be made a party.
I need no more than iterate now what I stated some years ago in an opinion I cited to counsel at the trial of the present case. (Matter of “ P ”. v. Department of Health of City of N. Y., 200 Misc. 1090.) That was a proceeding in which an alleged father of an infant applied for an order directing the respondent to issue a new or amended birth certificate so as to state that the surname of the infant is that of the petitioner. There I said (pp. 1094-1095): “ Moreover, as I suggested on the argument, the impact of my decision on the infant may be quite serious- — -and in my view, the infant should be directly represented in a proceeding such as this, where the granting of the petitioner’s application would mean that (however undesired or unjust so far as the infant is concerned) he will forever be subject to the psychological hazard if not the public handicap of illegitimacy. I am not unmindful that in history’s pages there is recorded the fact that some children born out of wedlock —■ whether as a result of momentary passion, incidental indiscretion or lasting love — have in later life made their marks as great men and women. I know, too, that more and more have statutory enactments properly sought to break down the unfair barriers created by earlier concepts in these matters. Nor am I unaware of certain current thinking that legitimacy or bastardy is a natal status of no moment in these days of social development and advanced understanding. For myself, however, I am not sure that centuries of tradition and morality and law can juridically be so easily deprecated. I am not warranted *1077 in ignoring" the child’s right to be represented or heard in a proceeding which may have a lasting bearing on the determination of his parentage. Be that as it may, even from the point of view of property and of practicality, an infant of the age of six, as a ward of the court, is entitled to direct professional representation. Suppose the husband has a substantial estate — should there even be any tangential determination by this court that the husband is not the father of the child — and thus render it more difficult, if not impossible, for the infant in later life to obtain a possible just inheritance ? In Matter of Melis v. Department of Health (260 App. Div. 772, 775) the court indicated that in a suit for a declaratory judgment, ‘ the infant, whose rights are paramount, should be made a party in the manner provided by law (Civ. Prac. Act, § 225) and a guardian ad litem appointed to protect its interests. [Citing cases.] ’ I think that without question the same procedure should be followed here.”
What is before me now does not involve a mere change of name of the infant. The case at bar is certainly more all-pervasive; and it seems to me that what I wrote in Matter of “ P ” (supra) is all the more persuasive.
The next phase of the case to be considered is that of Doe — is he a necessary party? CPLR 1001 (subd. [a]) provides that ‘ ‘ Persons who ought to be parties if complete relief is to be accorded between the persons who are parties to the action or ivho might be inequitably affected by a judgment in the action shall be made plaintiffs or defendants.” (Emphasis supplied.) Where, as here, the defendant specifically seeks a judgment declaring that the marriage between the plaintiff and Doe is void, it is clear to me that the latter ‘ ‘ might be inequitably affected by a judgment in the action.” He is therefore a necessary party and the cause should not proceed to judgment without giving him a formal opportunity to appear and to contest or consent to the judgment sued for in the counterclaim. (Manhattan Stor. & Warehouse Co. v. Movers & Warehousemen’s Assn, of Greater N. Y., 289 N. Y. 82; Wood v. City of Salamanca, 289 N. Y. 279, 282-283; Cominos v. Cominos, 23 A D 2d 769; Impellizzeri v. Impellizzeri, 133 N. Y. S. 2d 44, 47.)
In Manhattan Stor. & Warehouse Co. (supra, p. 88) the Court of Appeals stated: “ An action for a declaration of ‘rights’ and ‘ legal relations ’ in accordance with section 473 of the Civil Practice Act [now CPLR 3001] serves a legitimate purpose where all persons who are interested in or might be affected by the enforcement of such ‘ rights ’ and ‘ legal relations ’ and who might question in a court the existence and scope of such rights, *1078 are parties to the action and have opportunity to be heard. As to persons who are not parties a declaratory judgment would be a mere academic pronouncement without juridical consequence, but which might be embarrassing if attempt is made thereafter to enforce these rights in legal proceedings to which they are parties. A court may, and ordinarily must, refuse to render a declaratory judgment in such case. (Post v. Metropolitan Casualty Ins. Co., 227 App. Div. 156.) ”
CPLR 3211 (subd. [a], par. 10) provides that a “ party may move for judgment dismissing one or more causes of action asserted against him on the ground that * * * the court should not proceed in the absence of a person who should be a party ”. It is argued by the defendant that, since the plaintiff made no motion in respect of Doe as an absent and necessary party, the plaintiff has waived the point. Once again, I do not agree. The court, on its own, may raise the issue (Steinbach v. Prudential Ins. Co. of America, 172 N. Y. 471). That was the rule under the Civil Practice Act (Prashker, New York Practice [4 ed.], § 162, p. 328), and it is the rule today (2 Weinstein-Korn-Miller, N. Y. Civ. Prac., par. 1001.03). “Nonjoinder of a party who should be joined under section 1001 is a ground for dismissal of an action without prejudice unless the court allows the action to proceed without him under the provisions of that section. * * * Parties may be added or dropped by the court, on motion of any party or on its own initiative, at any stage of the action and upon such terms as may be just ” (CPLR 1003; emphasis added).
Next, as to Coe. In the circumstances unfolded by the proof in this case, I do not consider him a necessary party. No relief is requested against him as such. That his divorce is in question is incidental to a determination of the issues between the present parties (Newburger v. Newburger, 5 N Y 2d 953). And, when he voluntarily appeared in the Mexican court — albeit some time after the issuance of the decree against him — he expressly and formally indicated his lack of interest in the marital status between him and the plaintiff (cf. Hytell v. Hytell, 44 Misc 2d 663).
In sum, my disposition of the case at the present posture of submission is as follows: (1) The infant should be named as a party, and a special guardian should be appointed to protect his interests. If the parties are financially unable to meet the expense involved, I shall endeavor to invoke the good offices of The Legal Aid Society. (2) Doe should be named a party. (3) Coe need not be so named. If the present parties desire to *1079 proceed accordingly, they may submit on notice an order with provisions for appropriate relief. If the parties do not, the counterclaim is dismissed without prejudice, and a judgment (which shall include a provision for consensual discontinuance of the complaint) may be submitted on notice to that effect. No costs.

 The defendant is correct in stating that the parties themselves did not raise this issue. However, as hereinafter noted, I called to the attention of counsel at the trial my opinion in Matter of “ P ” v. Department of Health of City of N. IT. (200 Mise. 1090) from which I have quoted in the text of this opinion.
The plaintiff states that “ The cases cited [at the trial] by the Trial Judge merely contain language establishing the reluctance of a Court to declare a child illegitimate”. Insofar as Matter of “P” is concerned, at least, the plaintiff seems to have overlooked the crux of my decision.