George L. Cobb, J.
This proceeding arises out of the award of a contract on November 27, 1970 by respondent Flavin, the State Reporter, to respondent Lawyers Co-Operative Publishing Company (hereinafter referred to as “ Lawyers Co-Op ”), for the publication and printing of the Court of Appeals Reports, the Appellate Division Reports, the Miscellaneous Reports, and the Combined Official Series, together with the Weekly Advance Sheets thereof (hereinafter sometimes collectively referred to as the “ Official Reports ”), for a five-year period commencing January 1,1971.
Petitioner Williams Press, Inc., the holder of a similar contract which expired on December 31, 1970 (hereinafter referred to as the “ 1966 contract ”), and an unsuccessful bidder on the 1971 contract, instituted this proceeding in January of 1971, seeking a judgment declaring (1) that the contract between the respondents entered into on November 27, 1970 “ should have been rejected by the State Reporter for failure to comply with statutory requirements of the Judiciary Law and the *1083 established standards for competitive bidding”; (2) that said contract “ at all times from its inception was illegal and void ”; (3) that “ Williams Press, Inc. * * * and all other law book dealers similarly situated who havé obtained subscriptions to the Official Series, are the lawful equitable owners of the present list of subscribers to the Official Reports and Advance Sheets and that- such law book dealers are not required to furnish any list of subscribers to any succeeding contractor unless and until such contractor agrees to comply with all of the conditions of subparagraph (g) of paragraph 5 of the contract dated November 29, 1965 between the petitioner and the State Reporter”; (4) that “any future contract or bid invitation prepared by the State Reporter * * * shall comply with the provisions of Section 434 of the Judiciary Law and all contractual obligations of the State Reporter under [said contract] ”; and further declaring the rights and obligations of the respective parties.
On December 7,1970 the respondent Flavin, with the approval of Chief Judge Fuld, annulled the contract entered into on November 27, 1970 with respondent Lawyers Co-Op, and, in a companion proceeding brought by said respondent, the courts have refused to review the legality of the annulment action (see Matter of Lawyers Co-Op. Pub. Co. v. Flavin, 69 Misc 2d 493, affd. 39 A D 2d 616, mot. for lv. to app. den. 30 N Y 2d 488). It appears that, after the annulment of the Lawyers Co-Op contract, the State Reporter entered into an interim agreement with the petitioner for the printing and publication of the- reports pending a resolution of the issues raised in this proceeding.
Although cast in the form of a proceeding to review pursuant to article 78 of the CPLR, this proceeding from the beginning sought declaratory judgment relief. Two of the parties have now expressly agreed, and the remaining party impliedly concedes, that there are presently only two questions which the parties wish adjudicated, namely, (1) if the State Reporter enters into a contract with a contractor other than the petitioner, will such other contractor be required to pay to the petitioner discounts or commissions on renewal subscriptions in cases where such subscriptions were originally placed directly with petitioner rather than through a lawbook dealer other than the petitioner; and (2) on what terms may the State Reporter require contractors to supply the Session Laws of the State of New York to each subscriber to the Official Reports or to the Weekly Advance Sheets at no cost to the Reporter or the subscriber. The State Reporter expresses the former issue in terms *1084 of whether the public or the petitioner owns the list of subscribers who placed their orders directly with the petitioner.
The State Reporter is required by law to enter into contracts for five-year terms for the printing and publication of the Official Reports under the procedure detailed in section 434 of the Judiciary Law. Petitioner has printed such Official Reports for many years and, as hereinabove stated, was the contractor under the last five-year contract, which was the said 1966 contract.
. Said 1966 contract established the price at which the Official Reports would be offered for sale and sold to the public, either individually or upon annual subscription, and, in subparagraph (g) of paragraph 5 thereof, provided for a discount from said list prices for new subscribers and for annual renewals- of subscriptions, by the use of the following language: “ The Contractor agrees to sell subscriptions to current volumes of the said Official Reports in printed or microphotographie form, including the Weekly Advance Sheets thereof, and the Advance Sheets of the Session Laws of the State of New York; or subscriptions to the Weekly Advance Sheets and the Advance Sheets of the Session Laws of the State.of New York alone, as they are published under this contract, to any other law book dealer or law book publisher who maintains good credit with the Contractor, at a discount of 33 and % per cent of the said list prices set forth above, for subscriptions sold to any new subscribers after the effective date of this contract, and to pay the same commission on annual renewals of such subscriptions during the term of- this contract. All present and future subscriptions shall be registered by the Contractor in the name of the respective Law Book Dealers, and such subscriptions reserved to each such Dealer, in accordance with the established custom in the Law Book Trade. The Reporter recognizes that it is fair and equitable that such Law Book Dealers should be entitled to such commissions upon annual renewals of the subscriptions which they have obtained and, to the extent of his statutory powers, will provide for the payment of such commissions on such renewal subscriptions in future contracts made in accordance with the provisions of the Judiciary Law ”.
Said 1966 contract in paragraph 17 thereof dealt with the circumstance of a possible change in the contractor in succeeding contracts by the use of the following language: “ The Contractor shall co-operate with any succeeding contractor to the end that the bound volumes, printed signatures and material in type shall be made available either to subscribers, law book dealers *1085 or the succeeding contractor. The Contractor shall, insofar as possible, make volumes bound prior to the. date of this contract available to subscribers and shall make reasonable efforts to acquire such bound volumes and information relative thereto from the prior contractor. The list of the subscribers to the Official Reports in printed or microphotographie form as registered with the Contractor is the property of the Law Book Dealers who sold such subscriptions. The Contractor shall furnish such registered list of Law Book Dealers and their subscribers to any succeeding contractor in consideration of his agreement to comply with all the conditions of subparagraph (g) of paragraph 5 of this contract ”.
It is the petitioner’s contention that, pursuant to the quoted language, if the contract is now awarded to anyone else, the petitioner will be entitled to receive commissions of 33%% upon annual renewals of all subscriptions which were originally placed directly with it. In short, petitioner claims that, if there is a new contractor, petitioner automatically achieves the status of “ law book dealer ” and thereafter will be entitled, as are all other lawbook dealers, to receive said commissions. In support thereof, petitioner points to the use in the 1966 contract of the word “ other ” in connection with the term “ law book dealers ” and argues that, by implication, this establishes petitioner’s status as a lawbook dealer. Furthermore, it points to other provisions of the 1966 contract which, in reflection of the statute (judiciary Law, § 434, subds. 4, 8) obligates the printer to sell the reports, which, it says, is after all, what a dealer does. Furthermore, petitioner points to subparagraph (f) of paragraph 5 of the 1966 contract, which obligates it “ as a Law Book Dealer in the Official Reports to sell the said Reports and Weekly Advance Sheets thereof, and the Advance Sheets of the Session Laws ”. (Emphasis added.)
The court must concede that, for some purposes, the parties to the 1966 contract believed that the petitioner, in discharging certain of its duties thereunder, might properly be termed a lawbook dealer. However, the language of subparagraph (g) of paragraph 5 of the 1966 contract provided for the specified discount “ to any other law book dealer or law book publisher who maintains good credit with the Contractor ” (emphasis added), and the court cannot interpret this language as including the petitioner. Said subparagraph, in making provision for the insertion in future contracts of the payment of commissions on renewal subscriptions, guarantees the payment “ of such com: missions on such renewal subscriptions ” (emphasis added). *1086 The “ such” can only refer to the discount payable only to lawbook dealers or lawbook publishers other than the “ Contractor ” who is the petitioner.
Accordingly, the court will declare that, in the event of a change of contractor from the petitioner after December 31, 1970, the petitioner is not entitled to receive, pursuant to the 1966 contract or any predecessor contract, any commissions or discounts on any annual renewals of subscriptions to the Official Reports.
The court believes that it should now declare whether or not the petitioner is vested with any property right in the list of subscribers who originally placed their subscriptions directly . with the petitioner.
The petitioner says that the said list of subscribers who originally placed their subscriptions directly with petitioner is comparable to a customer list entitled to protection under the authority of the ruling in Town & Country House & Home Serv. v. Newbery (3 N Y 2d 554) and similar cases. Such cases hold that a former employee who has established a business which is competitive with his former employer may not solicit “the latter’s customers who are not openly engaged in business in advertised locations or whose availability as patrons cannot readily be ascertained but6 whose trade and patronage have been secured by years of business effort and advertising, and the expenditure of time and money, constituting a part of the goodwill of a business which enterprise and foresight have built up ’ ” (Town & Country House & Home Serv. v. Newbery, supra, p. 558). The theory underlying court rulings in the customer list cases was aptly described in 28 ALR 3d 7,18 (Customer List-As Trade Secret-Factors, § 2, subd. [a]), in the following language:
“ The cases dealing with the subject matter of the annotation have proceeded upon a variety of theories, all of which, in one form or another, pay heed to the public interest in free competition and individual freedoms on the one hand, as weighed against one’s right to the protection of business assets, and the general interest in maintaining certain standards of commercial morality on the other ”.
Bearing in mind that the overwhelming majority of the names on the subscriber list in question are members of the Bar, doing business from addresses which can readily be determined by referring to well known legal directories, there is, in any event, considerable doubt that the said subscription list was built up by the expenditure of the kind and amount of effort which is required before the courts would afford protection (cf. Hudson *1087 Val. Propane Corp. v. Byrne, 24 A D 2d 908). Of overriding importance, however, is the fact that said list was not compiled by a private business man competing on an equal basis with all others in the same calling. Instead, it was compiled by the State-subsidized contractor of publications which the Legislature has said shall be published and sold to the general public. The circumstances surrounding the compilation of this list are unique and the court must look to the broad public objective here involved for the answer to the question of the disposition of the said list upon a change of contractor.
Article 14 of the Judiciary Law was undoubtedly ehacted to insure that the decisions of the appellate courts of this State and the important decisions in the other courts of the State would be accurately reported and readily available on reasonable terms to members of the Bench and Bar, interested public officials and the public generally. It is obviously in the public interest that all of these persons be fully and promptly informed of judicial decisions as they are rendered and the Legislature unquestionably had that objective in mind when it enacted said article 14. The Legislature determined that this duty to inform should be discharged, in major part, by employing a private contractor, but it made certain that, at all times, the manner in which the contractor performed its contract would be supervised and controlled by State officials, namely, the State Reporter and the Chief Judge of the Court of Appeals. The contractor, at all times, must regard itself as discharging a public duty and, in resolving any ambiguity as to the intention of the parties to such a contract, the public purpose to be served must be regarded as the prime factor.
An interpretation of the contract which could cause any delay or interference with the continuous and prompt dissemination of the said decisions as they are rendered would ignore the basic objective of the contract. If, upon a changó of contractor, the new contractor could not promptly obtain the list of subscribers, such delay and interference would result. The court finds that the said list is not the property of the petitioner, but is the property of the State, and the court will so declare.
The court now turns to the request that the court declare the terms upon which future contracts may require the contractor to supply Session Laws to subscribers. It appears that the petitioner herein for many years past has been the successful bidder for the contract for legislative printing (see State Printing Law, §§ 5, 6) and that, in discharging the duties under *1088 this contract, the petitioner produced much of the material which was needed to supply copies of the Session Laws to subscribers to the Official Reports. The 1966 contract contained a provision requiring the contractor to supply the Session Laws to such subscribers at no cost to the State Reporter or the subscriber. The now annulled contract entered into in 1970 with Lawyers Co-Op stated that the contractor would similarly provide the Session Laws to subscribers on the no-cost basis but imposed this obligation only if the contractor had also contracted “ to print the Session Laws of the State of New York ” which, as a practical matter, meant that the contractor must supply the . Session Laws for no additional charge only if such contractor had also obtained the contract for legislative printing.
The petitioner says that the new provision unlawfully discriminates against it because if, as expected, it retains the legislative printing contract, it would, as the contractor of the Official Reports, be obligated to do something that no other contractor would be obligated to do. The petitioner points out that, although it can provide the Session Laws to subscribers to the Official Reports for much less than anyone else, there is additional expense involved in discharging this obligation which is not paid for under the legislative printing contract.
Lawyers Co-Op, on the other hand, says that the 1966 version of this obligation unfairly discriminates in favor of the present holder of the legislative printing contract, i.e., the petitioner herein, because the holder of the legislative printing contract can always supply the Session Laws to subscribers to the Official Reports for less money than anyone else.
While it appears that the Official Reports are presently being published under an interim arrangement with the petitioner, the State Reporter plans to solicit a new contract in the reasonably near future and seeks a declaration as to what he may properly demand in the new contract concerning furnishing the Session Laws.
Courts do not render declarations on hypothetical questions nor will they grant declaratory judgment relief in the absence of parties who are interested in or who might be affected by the declaration rendered. In Prashker v. United States Guar. Co. (1 N Y 2d 584), the court said (p. 592): “ The courts do not make mere hypothetical adjudications, where there is no presently justiciable controversy bef ore the court, and where the existence of a ‘ controversy ’ is dependent upon the happening of future events. (Guardian Life Ins. Co. of America v. Graves, *1089 268 App. Div. 809; Maryland Cas. Co. v. Tindall, 30 F. Supp. 949, affd. 117 F. 2d 905; American Fidelity & Cas. Co. v. Service Oil Co., 164 F. 2d 478.) ”
In Manhattan Stor. & Warehouse Co. v. Movers & Ware-housemen’s Assn. (289 N. Y. 82), the court said (p. 88): “ An action for a declaration of ‘ rights ’ and ‘ legal relations ’ in accordance with section 473 of the Civil Practice Act serves a legitimate purpose where all persons who are interested in or might be affected by the enforcement of such ‘ rights ’ and ‘ legal relations ’ and who might question in a court the existence and scope of such rights, are parties to the action and have opportunity to be heard. As to persons who are not parties a declaratory judgment would be a mere academic pronouncement without juridical consequence, but which might be embarrassing if attempt is made thereafter to enforce these rights in legal proceedings to which they are parties. A court may, and ordinarily must, refuse to render a declaratory judgment in such case. (Post v. Metropolitan Casualty Ins. Co., 227 App. Div. 156.) ”
In the instant case, the court does not find that the State Reporter is under any duty or obligation to include in any new contract any clause relative to furnishing the Session Laws to subscribers to the Official Reports. It seems likely, however, that the State Reporter has discretionary power to do so, but whether or not he, after considering all of the ramifications of the problem, will insert such a clause in soliciting a new contract and, if he does so, what clause, is not presently known. Accordingly, any question concerning the legality of such a clause must be regarded at this point as hypothetical.
Furthermore, there may be printers other than Williams Press, Inc., and Lawyers Co-Op who may seek the new contract for the Official Reports and no declaration that the court might make here would be binding on such others. Under these circumstances, the court must decline to render any declaratory judgment upon this issue.
The respondent Lawyers Co-Op, in its answer to the petition herein, has asserted, by way of counterclaim, a cause of action
for an accounting of profits and related relief, stemming from allegations that the now annulled agreement between the State Reporter and Lawyers Co-Op was in all respects valid and legal and that it acquired vested rights thereunder. By service of a document entitled “ cross-claim ” (cf. CPLR 3011), Lawyers Co-Op has asserted its right to similar relief against the respondent Flavin. The court is uncertain as to the status these claims *1090 will have following the entry of the judgment to he entered upon this decision and suggests that an appropriate disposition of such, which is agreeable to all of the parties, be inserted in the judgment to be entered hereon (see CPLR 407, 603).
Submit judgment on notice.