■ In the Matter of WILLIAMS PRESS, INC., Appellant-Respondent, v. JAMES M. FLAVIN, as State Reporter, Respondent, and LAWYERS CO-OPERATIVE PUBLISHING COMPANY, Respondent-Appellant.— Cross appeals from a judgment of the Supreme Court at Special Term, entered July 11, 1973 in Albany County, which declared the rights of the parties with respect to certain issues presented by a proceeding brought pursuant to CPLR article 78. Petitioner, for many years prior to 1971, was the publisher of the Official Reports of the State of New York which include the New York Reports, Appellate Division Reports, Miscellaneous Reports and the weekly advance sheets thereof. For many years petitioner was the only bidder for the contract to publish said reports and particularly had been awarded the contract for consecutive five-year periods from 1956 through 1970. (Judiciary Law, § 434, subd. 7.) Respondent, Lawyers Co-Operative Publishing Company (hereinafter referred to as Lawyers Co-Op), submitted a competing bid for the 1971–1975 contract and was awarded the contract on November 27, 1970. Petitioner, thereafter, refused to turn over the subscription lists to the reports in its possession to the new contractor and, further, refused to transfer other material necessary for the continuous, timely, and accurate publication of the reports. Because of the possibility of interruption and delay in publications and circulation of the reports, respondent, James M. Flavin, the State Reporter (hereinafter referred to as the Reporter), on December 11, 1970, annulled the contract with Lawyers Co-Op in the public interest which was approved by the Chief Judge. In an article 78 proceeding, Lawyers Co-Op sought to rescind this annulment of the contract and to have the contract reinstated which proceeding was dismissed on the ground that section 434 of the Judiciary Law barred judicial

review. (*Matter of Lawyers Co-Op. Pub. Co.* v. *Flavin,* 69 Misc 2d 493, affd. 39 A D 2d 616, mot. for lv. to app. den. 30 N Y 2d 488.) On January 7, 1971, petitioner commenced this proceeding seeking declarations that the November 27, 1970 contract was invalid and that various specific provisions must be included in any future contract proposed by the Reporter. After the annulment of the contract with Lawyers Co-Op, the Reporter entered into an interim agreement with petitioner for the printing and publication of the reports pending a resolution of the issues raised in this proceeding. At a hearing held on February 11, 1972 before Special Term, the parties stipulated that the proceeding should be considered as an action solely for declaratory judgment on the following issues: " (1) With regard to lists of subscribers to the Official Reports, (a) Is the list of subscribers to the Official Reports who first purchased their subscriptions prior to January 1, 1956 the property of Williams Press, and does it therefore have a right to receive continuing commissions on renewals of all such subscriptions from any successor as contractor to print the Official Reports? (b) Is the list of subscribers whose subscriptions were sold to them by Williams Press after January 1, 1956 the property of Williams Press, and does it therefore have a right to receive continuing commissions on renewals of these subscriptions from any successor as contractor? (c) Is the State Reporter required to include in any proposed printing contract a provision stating that any law book dealer shall have a right to receive discounts or commissions with respect to new sales or with respect to renewals of all subscriptions to the Official Reports obtained by them after January 1, 1956 under both the three previous contracts and the proposed contract? (2) May the State Reporter, without improperly discriminating among bidders, include the following provision in a proposed contract for publication of the Official Reports: 'If the Contractor had also contracted to print the Session Laws of the State of New York, each subscriber to the Official Reports or to the Weekly Advance Sheets shall receive, in pamphlet form, the Session Laws of the State of New York, at no cost to the Reporter or the subscriber?' " In its determination of these issues, Special Term held, and the judgment appealed from provides, that the rights of the parties are as follows: " (1) in the event of a change of contractor for publication of the Official Reports from the petitioner after December 31, 1970, the petitioner is not entitled to receive, pursuant to any prior contract, any commissions or discounts on any annual renewals of subscriptions to the Official Reports which were originally placed by subscribers directly with the petitioner; (2) the list of subscribers to the Official Reports who originally placed their subscriptions directly with the petitioner is not the property of the petitioner but is the property of the State of New York; (3) the respondent State Reporter is under no duty or obligation to include in any new contract for publication of the Official Reports any clause relative to furnishing printed copies of the Session Laws of the State of New York to subscribers to the Official Reports; and (4) in the event of a change of contractor for publication of the Official Reports from the petitioner after December 31, 1970, the petitioner will be entitled to receive upon annual renewals of any subscriptions * * * any commissions or discounts which such other law book dealers would have been entitled to receive if such law book dealers had not transferred such subscriptions to the petitioner". Petitioner has appealed from each and every part of the judgment, while Lawyers Co-Op has appealed only from that portion of the judgment as set forth in paragraph (4) of the declaration of rights. The main issues raised on appeal are (1) the extent, if any, of petitioner's ownership of the subscription lists to the Official Reports, and (2) whether the clause

included in the 1971–1975 Lawyers Co-Op contract relative to furnishing printed copies in pamphlet form of the Session Laws of the State of New York to subscribers of the Official Reports is discriminatory and, therefore, illegal. Article 14 of the Judiciary Law provides that the publication, printing and distribution of the Official Reports is to be conducted as a governmental activity carried out by and under the direction of the Reporter. Subdivision 12 of section 434 of the Judiciary Law authorizes the Reporter to modify or annul a contract when the public interest so requires and provides that he shall be the exclusive judge of what the public interest requires, and his decision in that regard shall be final. (*Matter of Lawyers Co-Op. Pub. Co.* v. *Flavin, supra.*) Under the terms of the last contract between petitioner and the Reporter for the five-year period 1966–1970, the contractor agreed to co-operate with any succeeding contractor by making available both work in progress and lists of subscribers. Paragraph 17 of that contract relating to the "Effect of change in Contractor" provides, in part, as follows: "The Contractor shall co-operate with any succeeding contractor to the end that the bound volumes, printed signatures and material in type shall be made available either to subscribers, law book dealers or the succeeding contractor.  *  *  *  The list of the subscribers to the Official Reports in printed or microphotographic form as registered with the Contractor is the property of the Law Book Dealers who sold such subscriptions. The Contractor shall furnish such registered list of Law Book Dealers and their subscribers to any succeeding contractor in consideration of his agreement to comply with all the conditions of subparagraph (g) of paragraph 5 of this contract." Paragraph 17 specifically obligates any outgoing contractor to furnish a copy of the subscription lists to any succeeding contractor, and the only consideration set forth is the successor's agreement to comply with the conditions of subparagraph (g) of paragraph 5 of the contract. There is no reference to any right to sell the list to the succeeding contractor nor any right to withhold it. Subparagraph (g) of paragraph 5, which relates to the determination of the issue of ownership of the subscription list to the Official Reports, provided: " (g) The Contractor agrees to sell subscriptions to current volumes of the said Official Reports in printed or microphotographic form, including the Weekly Advance Sheets thereof, and the Advance Sheets of the Session Laws of the State of New York; or subscriptions to the Weekly Advance Sheets and the Advance Sheets of the Session Laws of the State of New York alone, as they are published under this contract, to any other law book dealer or law book publisher who maintains good credit with the Contractor, at a discount of 33 and ⅓ per cent of the said list prices set forth above, for subscriptions sold to any new subscribers after the effective date of this contract, and to pay the same commission on annual renewals of such subscriptions during the term of this contract. All present and future subscriptions shall be registered by the Contractor in the name of the respective Law Book Dealers, and such subscriptions reserved to each such Dealer, in accordance with the established custom in the Law Book Trade. The Reporter recognizes that it is fair and equitable that such Law Book Dealers should be entitled to such commissions upon annual renewals of the subscriptions which they have obtained and, to the extent of his statutory powers, will provide for the payment of such commissions on such renewal subscriptions in future contracts made in accordance with the provisions of the Judiciary Law." Petitioner contends that the provisions of subparagraph (g) of paragraph 5 confirm its status as a law book dealer, and that all subscriptions placed directly with petitioner before and after January 1, 1956 shall be registered in its

name and reserved to it in accordance with the second sentence of subparagraph (g) of paragraph 5. In addition, petitioner contends that the terms of the first and third sentences of subparagraph (g) of paragraph 5 entitle it to commissions for sales made to those on its subscription list by any succeeding contractor. The obligation of providing the public with printed opinions of the courts is a public function over which the State, through the Reporter, retains ultimate control, and no private rights other than those specifically granted by contract accrue to private parties. In the performance of the contract, petitioner was, at all times, performing an obligation of the Reporter for the Reporter. This precludes any claim that the fruits of the efforts expended on behalf of the State, namely the list of subscribers, belong to petitioner. As Special Term stated in *Matter of Williams Press* v. *Flavin* (74 Misc 2d 1082, 1087) : " Article 14 of the Judiciary Law was undoubtedly enacted to insure that the decisions of the appellate courts of this State and the important decisions in the other courts of the State would be accurately reported and readily available on reasonable terms to members of the Bench and Bar, interested public officials and the public generally. It is obviously in the public interest that all of these persons be fully and promptly informed of judicial decisions as they are rendered and the Legislature unquestionably had that objective in mind when it enacted said article 14. The Legislature determined that this duty to inform should be discharged, in major part, by employing a private contractor, but it made certain that, at all times, the manner in which the contractor performed its contract would be supervised and controlled by State officials, namely, the State Reporter and the Chief Judge of the Court of Appeals. The contractor, at all times, must regard itself as discharging a public duty and, in resolving any ambiguity as to the intention of the parties to such a contract, the public purpose to be served must be regarded as the prime factor." It is also petitioner's contention that it is a licensee subject only to State regulation and, as such, has been granted a property right in the subscription list. However, the terms " license " or " licensee " were never used by the parties to describe their relationship, and petitioner has always been referred to as the contractor performing a service for the State and being compensated therefor by the State. Petitioner, by reason of its contract, gained the right to print the Reporter's manuscript and distribute the printed volumes to the Reporter's customers. Such a right is in the nature of a contract right to perform a service, not a property right of ownership. Petitioner further contends that the subscription list is entitled to protection as a trade secret. In order to constitute a trade secret, the " secret " information must not be readily available. (*Public Relations Aids* v. *Wagner*, 37 A D 2d 293.) The vast majority of the names on the subscription list are members of the Bar whose business addresses are easily determined by referring to various legal directories, and the creation of such a subscription list could be accomplished by engaging in a concentrated advertising and marketing campaign. Petitioner is not entitled to compensation for the subscription list as a trade secret since such list is not entitled to protection as a trade secret. Petitioner further contends that, even though it is held that it does not own the subscription list, if the contract is awarded to a succeeding contractor, petitioner is entitled to receive commissions as a law book dealer, upon annual renewals of all subscriptions which were originally placed directly with it. To support its contention, petitioner relies upon the provisions of subparagraph (g) of paragraph 5 of the contract for the period 1966 to 1970 claiming that, under a succeeding contractor, petitioner obtains the status of " law book dealer " and,

therefore, becomes entitled to receive such commissions. Subparagraph (g) of paragraph 5 clearly distinguishes between the contractor and other law book dealers and provides for the contractor to sell subscriptions at a discount "to any other law book dealer or law book publisher who maintains good credit with the contractor" and to allow the same commission on annual renewals of such subscriptions. The language in the third sentence of subparagraph (g) of paragraph 5 that "it is fair and equitable that such Law Book Dealers should be entitled to such commissions upon annual renewals of the subscriptions which they have obtained" necessarily refers to commissions allowed to the law book dealers by petitioner as the contractor. There is no basis for interpreting the language of subparagraph (g) of paragraph 5 to include petitioner as a law book dealer for purposes of commissions and discounts under subparagraph (g) of paragraph 5. Petitioner is not entitled to receive, pursuant to subparagraph (g) of paragraph 5, any commissions or discounts on any annual renewals of subscriptions placed directly with it. Petitioner also urges that it is entitled to commissions or discounts upon annual renewals of subscriptions purchased by it from other law book dealers. Special Term decided this issue in favor of petitioner, holding that, as assignee of other law book dealers' rights to receive renewal commissions, petitioner was entitled to the same treatment as any other assignee of such right. We agree that the transfer to petitioner of renewal rights by other law book dealers was a valid legal assignment of such rights enforceable by petitioner. The final issue presented is whether the Reporter may include in any proposed contract for publication of the Official Reports the following provision: "If the Contractor has also contracted to print the Session Laws of the State of New York, each subscriber to the Official Reports or the Weekly Advance Sheets shall receive, in pamphlet form, the Session Laws of the State of New York at no cost to the Reporter or the subscriber." Essentially, petitioner argues that, since it had the contract to print the Session Laws at the time it bid on the 1971 Official Reports contract, it was discriminated against because if it was awarded the Official Reports contract, it would be forced to supply the Session Laws to subscribers free of charge while its competitors would not be so required. Special Term determined that there was no assurance that this clause would be found in a later contract for publication of the Official Reports and the question was, therefore, hypothetical. Petitioner is seeking the construction of a clause not presently in force and not certain to be included in a future contract. Not only is there no assurance that the clause will be found in a later contract, but there is also no way of knowing whether, at the time bidding is opened on the next contract for publication of the Official Reports, petitioner will still be publishing the Session Laws. The courts do not make mere hypothetical adjudications where there is no presently justiciable controversy before the court and where the existence of a "controversy" is dependent upon the happening of future events. (*Prashker* v. *United States Guar. Co.*, 1 N Y 2d 584, 592.) There is no legal requirement that obligates the Reporter to include in any contract for the publication of future Official Reports any clause concerning the furnishing of Session Laws to subscribers of the Official Reports. The determination of Special Term declining to discuss this hypothetical issue was correct. Judgment affirmed, without costs. **Herlihy,** P. J., Staley, Jr., Sweeney, Kane and Main, JJ., concur. [74 Misc 2d **1082.**]