■ CALOGERO MARINO, Respondent, v. EDWARD F. NOLAN et al., Appellants.— In an action for specific performance of a contract for the sale of certain real property, in which the defendants asserted a counterclaim for return of their deposit, defendants appeal from a judgment of the Supreme Court, Nassau County, entered August 24, 1965 upon the court's decision, after a nonjury trial, in the plaintiff's favor and dismissing the defendants' counterclaim on the merits. Judgment affirmed, with costs. On January 12, 1965, plaintiff contracted to sell to defendants certain real property for $70,000, payable $5,000 down, the balance on closing. The contract was subject to the defendants securing a " purchase money mortgage " for $60,000 at not exceeding 5¾% interest for not less than 25 years. Defendants agreed to apply to lending institutions for the mortgage and were to have three weeks from the date of the contract to secure a mortgage commitment. If defendants were unsuccessful in securing a commitment, plaintiff was to have the option to secure the mortgage for the defendants within three weeks. If the plaintiff could not secure the mortgage, the contract was to be cancelled. On February 18, 1965 defendants' attorneys notified plaintiff's attorney in writing that defendants had been unable to obtain the mortgage. On February 27, 1965 plaintiff's attorney notified defendants' attorneys that plaintiff would give the mortgage on the same terms and conditions as provided in the contract. Defendants demanded cancellation of the contract on the ground that the contract contemplated only an institutional mortgage and that, in any event, plaintiff's offer of the mortgage was made more than six weeks after January 12, 1965. In our opinion, Special Term was correct in holding that (1) neither plaintiff nor defendants were restricted by the contract to obtaining the mortgage from a lending institution; and (2) plaintiff's offer of the mortgage on February 27, 1965 was timely because it was made within three weeks after defendants had notified plaintiff on February 18, 1965, by letter received February 19, 1965, that they were unable to secure the mortgage. This case is distinguishable on its facts from Glassman v. Gertsein (10 A D 2d 875). In Glassman, by the terms of their agreement, the parties specifically agreed that the buyer could cancel the contract if he was unable to obtain an institutional mortgage. No such restriction to an institutional mortgage, either express or implied, can be found in the agreement at bar. Christ, Acting P. J., Rabin and Benjamin, JJ., concur; Brennan and Hopkins, JJ., dissent and vote to reverse the judgment and to grant judgment to the defendants on their counterclaim, with the following memorandum by Brennan, J., in which Hopkins, J., concurs: The contract prepared by the plaintiff's attorney on a standard printed form, with riders attached, provided for the purchase by the defendants of an uncompleted one-family dwelling in a real estate development. Specifications were set forth for the completion of the dwelling. The printed standard clause, which pro-

vided for the purchaser executing, acknowledging and delivering to the seller a bond or note secured by a purchase-money mortgage, was deleted and in place thereof the rider attached to the contract contained the following provision: "4. Subject to the purchasers securing a purchase money mortgage for the sum of $60,000 at a rate of interest not to exceed 5¾% for not less than 25 years. Purchaser agrees to diligently apply to lending institutions for this mortgage and shall have 3 weeks from this date to *secure* a mortgage commitment. In the event that purchaser is unable to *secure* this commitment, the seller shall then have the option to secure this mortgage for the purchaser within a period of 3 weeks or return the deposit paid hereunder and cancel this contract. If the seller elects to terminate this contract or cannot *secure* this mortgage upon the return of the deposit herein, this contract shall be cancelled and no further liability shall accrue as against either party. Said mtge [*sic*] to contain a pre-payment clause minimum rights after 5 yrs [*sic*] at 3% penalty." (Emphasis supplied.) As used in the above paragraph the word "secure" means "to obtain or to acquire" (Funk and Wagnall's Dictionary). One does not "secure, obtain or acquire" something from oneself. In addition, the rider provided that the purchaser agreed "to pay * * * the costs of the lending institution to process the mortgage * * * [and] shall also make the usual and/or required deposits with the lending institution in order to set up the estimated funds for future payments of taxes, water rates and/or insurance premiums." It provided that the $5,000 paid as a part of the purchase price was to be held in escrow by plaintiff's attorney "until a mortgage commitment is received." The contract also provided that "the deed shall be delivered upon receipt of said payments at the office of the lending institution." The defendants made application to 19 lending institutions for the subject mortgage and all declined, including the lending institution recommended by the plaintiff to the defendants; and the plaintiff was so notified. Thereupon the plaintiff stated that he individually would take back a purchase-money mortgage upon the same terms. The defendants declined this offer and demanded the return of the payment made on account of the purchase price. Nowhere does the contract state that the plaintiff shall have the option to take back a purchase-money mortgage. To those experienced in the real estate field, there is a substantial difference between a lending institution and an individual mortgagee; and it may be rightfully assumed that the purpose of such a clause, under the circumstances here present, where the defendants were purchasing an uncompleted house in a real estate development, was to assure them that they were paying a price which was not in excess of the fair market value of the property. As stated by SHAPIRO, J., in his oral decision at the close of the trial in *Glassman* v. *Gerstein,* which was affirmed (10 A D 2d 875): "For purposes of resale a mortgage given by a lending institution and specifically the amount of such mortgage bears a definite relationship in the eyes of a prospective purchaser to the alleged value of the property, so that a mortgage given by an individual mortgagee is far different from a mortgage given by a lending institution". In other words, a purchaser can rely upon the professional appraisal of value by a lending institution such as a bank, mortgage and loan association, insurance companies, etc. This contract must be construed within its four corners and the intentions of the parties gathered from the entire instrument. The above-quoted portion of the contract (par. 4) and the other conditions, to wit, that the payment on account of the purchase price was being held in escrow until the mortgage commitment was received; that the closing was to take place at the office of the lending institution for the payment of processing costs to the lending institution; and the fact that the provision for the seller taking back a pur-

chase-money mortgage was deleted from the standard form, are clear indications that the parties intended that the mortgage was to be obtained from a lending institution and the plaintiff had no right to demand the substitution of a different type of mortgage (*Glassman* v. *Gerstein, supra*; *Weschler* v. *Winter,* 20 Misc 2d 954).