■ HENRY NG et al., Appellants, v DOROTHY SIMONS et al., Respondents.—In an action, *inter alia,* for a judgment declaring that plaintiffs have complied with the "subject-to-mortgage" clause of a contract for the sale of real property and for the return of a down payment held in escrow, plaintiffs appeal from (1) so much of an order of the Supreme Court, Queens County (Hyman, J.), dated August 30, 1984, as denied that branch of their motion which was for a preliminary injunction to toll the running of the time period to cure their default, and (2) a judgment of the same court (Buschmann, J.), dated November 30, 1984, which, *inter alia,* upon an agreed statement of facts, dismissed the complaint and granted defendants' counterclaim to the extent that the defendant seller was awarded the down payment held in escrow as liquidated damages.

Appeal from the order dated August 30, 1984 dismissed, without costs or disbursements *(see, Matter of Aho,* 39 NY2d 241, 248). The issues raised on appeal from the order are brought up for review and have been considered on the appeal from the judgment (CPLR 5501 [a] [1]).

Judgment modified, on the law, by adding a provision declaring that plaintiffs have breached the contract dated on or about May 18, 1984 and that defendant seller is entitled to retain a down payment of $18,600 as liquidated damages. As so modified, judgment affirmed, without costs or disbursements *(see, Lanza v Wagner,* 11 NY2d 317, 334, *appeal dismissed* 371 US 74, *cert denied* 371 US 901).

On or about May 18, 1984, plaintiff purchasers entered into a contract with defendant seller to purchase certain real property for $186,000. At that time, a down payment of $18,600 was deposited with defendant seller's attorney, defendant Goldweber and Hershkowitz. The contract contained the following "subject-to-mortgage" clause: "The contract is conditioned upon the issuance within sixty (60) days of the date hereof, by a commercial bank, savings bank or savings and loan association licensed to do business in the State of New York, of a commitment to the purchasers pursuant to which it agrees to extend a conventional mortgage of not less than $110,000 for at least twenty-five (25) years at the then prevailing rate of interest. The Purchasers will apply for such commitment within ten (10) days after receipt of a fully executed contract of sale; and promptly thereafter will notify the seller when the application(s) is/are made and, in due course, when the application(s) is/are accepted or rejected. The Purchasers will submit to said lending institution(s) all

financial data and references requested by said institution(s) promptly after such request is made. In the event Purchasers do not receive a commitment within the time set forth herein, Purchasers or Seller shall have the option of cancelling this contract and upon refund of the down payment to the Purchasers, together with interest, if any, neither party shall have any obligations to the other."

The contract elsewhere provided that in the event of a default by the purchasers which was not cured within 10 days following written notice, the seller could, at her option, terminate the contract and retain the down payment as liquidated damages.

On or about May 30, 1984, plaintiffs notified defendant seller that a mortgage application to the Bowery Savings Bank had been made; in the same letter plaintiffs requested that the real estate broker involved in the transaction cease making mortgage applications on their behalf, without their consent.

By letters dated June 25, and July 5, 1984, respectively, plaintiffs informed defendant seller that the Bowery Savings Bank had rejected their application, but that a second application had been made, this time to Chase Manhattan Bank. In response defendant seller forwarded to plaintiffs a June 28, 1984 letter from the Greenpoint Savings Bank to the real estate broker which read:

"Dear Mr. Costanza:

"On May 18, 1984 your office applied for a $110,000 mortgage loan for the purchase of the above mentioned property indicating a sales price of $186,000 and Henry Ng and Palm Ng as purchasers.

"A Bank appraiser inspected the property on May 22nd and on May 24th your office was advised that the Bank will consider a mortgage loan of $110,000 under various rates and terms. You were also advised that in order to receive a written commitment we require a 1% ($1100) non-refundable commitment fee, $150 Appraisal fee and a signed copy of the Contract of Sale.

"To-date these items have not been received."

Defendant seller suggested to plaintiffs that the requested funds be transmitted to Greenpoint in order to avoid default under the contract. Plaintiffs denied that the failure to do business with Greenpoint would result in a default, and, upon Chase Manhattan's rejection of their mortgage application, they sought the cancellation of the contract and the return of

their down payment under the "subject-to-mortgage" clause. Defendant seller maintained that the contract was not subject to cancellation inasmuch as Greenpoint had indicated that it would issue a commitment, and by July 25, 1984, defendant gave plaintiffs written notice that they had 10 days to cure their default, as required by the contract.

Prior to the expiration of the curative period, plaintiffs commenced the instant action seeking, *inter alia,* a declaration that they had complied with the "subject-to-mortgage" clause of the contract and were entitled to the return of their down payment. The controversy was submitted to the court pursuant to an agreed statement of facts dated September 20, 1984, which, in paragraphs 4 and 5 thereof, stated that on June 28, 1984 the Greenpoint Savings Bank issued a *"commitment* letter", and that plaintiffs "did not accept the *commitment* so obtained from the Greenpoint Savings Bank by the broker" (emphasis supplied). The agreed statement of facts further provided, in paragraph 10 thereof, that the terms of the *"commitment"* issued by Greenpoint conformed to the contract (emphasis supplied).

On these appeals, plaintiffs contend that Special Term erred in refusing to look beyond the parties' agreed statement of facts to scrutinize the June 28, 1984 letter and determine that it did not constitute a firm mortgage commitment, contrary to the stipulation. We agree with Special Term that it was bound by the facts as submitted by the parties *(see, e.g., Manhattan Stor. & Warehouse Co. v Movers & Warehousemen's Assn.,* 289 NY 82, 86; *Goldfarb v State of New York,* 73 AD2d 1027, 1028). Further, Special Term was correct in its determination that under the facts as submitted, plaintiffs were in default and defendant seller was entitled to liquidated damages. According to the facts, as expressly agreed upon by the parties, the plaintiffs rejected a mortgage commitment which satisfied the terms of the contract. They were obligated to accept that commitment, although obtained by the broker, as the contract did not state that only the plaintiff purchasers could attempt to procure a mortgage commitment *(see, e.g., Marino v Nolan,* 24 AD2d 1005, *affd* 18 NY2d 627; *cf. Glassman v Gerstein,* 10 AD2d 875).

As plaintiffs were in default and defendant seller was ready, willing, and able to perform, Special Term correctly found that defendant seller was entitled to retain the down payment as liquidated damages, as provided by the contract.

Finally, we find no merit to plaintiffs' contention that Special Term erred in denying that aspect of their motion

which was for a preliminary injunction tolling the curative period (cf. *Mann Theatres Corp. v Mid-Island Shopping Plaza Co.*, 94 AD 2d 466, 475-477, *affd* 62 NY2d 930). Bracken, J. P., Weinstein, Kunzeman and Kooper, JJ., concur.